UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

CHRISTIAN STOKES,                                    :
                                                     :          08 Civ. 3667 (CM) (DFE)
                           Plaintiff,                :
                                                     :
       - against -                                   :
                                                     :
RONALD LUSKER, MARILYN KOCHER LUSKER,                :
EBERT & ASSOCIATES, STEVEN EBERT, ESQ.,              :
ANDREWS BUILDING CORP., MALLEY GROUP,                :
ERIC MALLEY, 85-87 MERCER STREET                     :
ASSOCIATES, INC.,                                    :
                                                     :
                           Defendants.               :
------------------------------------------------------------------- x

# MEMORANDUM OF LAW OF DEFENDANTS RONALD LUSKER AND MARILYN KOCHER LUSKER IN SUPPORT OF THEIR MOTION TO DISMISS

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................1

FACTUAL BACKGROUND............................................................................................3

APPLICABLE LEGAL STANDARD ..............................................................................5

ARGUMENT....................................................................................................................6

POINT 1 -  THE ONLY BREACH OF CONTRACT STATED BY THE
ALLEGATIONS OF THE COMPLAINT AND THE TERMS OF
THE CONTRACT IS STOKES'S BREACH, NOT THE LUSKERS'.............. 6

POINT 2 -  STOKES'S CLAIMS OF FRAUD, FRAUDULENT INDUCEMENT,
AND CONSPIRACY FAIL BASED ON THE TERMS OF THE
CONTRACT AND THE ALLEGATIONS OF THE COMPLAINT................. 8

    A.    Under the Contract's Terms, Stokes Could Not Justifiably Rely On the
Luskers To Tell Him He Could Not Rent The Unit To A Commercial
Retailer And Therefore He Has Not Stated a Claim for Fraud Or
Fraudulent Inducement. ........................................................................................8

    B.    Due To Stokes's Access To The By-Laws And That There Was Not A
Fiduciary Or Confidential Relationship Between Stokes And The
Luskers, The Luskers Had No Duty To Tell Stokes About the Claimed
Leasing Restriction. ............................................................................................11

    C.    Pursuant To Fed. R. Civ. P. 12(b) (6) And Fed. R.Civ. P. 9(b), Stokes's
Claims Of Fraud and Conspiracy Against The Luskers Must Be
Dismissed Since They Are Not Stated With Sufficient Particularity. ...................12

POINT 3 -  THE SECOND CAUSE OF ACTION MUST BE DISMISSED
BECAUSE IT IS WELL SETTLED NEW YORK LAW THAT
THE LUSKERS HAVE THE RIGHT TO RETAIN THE INITIAL
DOWN PAYMENT AS LIQUIDATED DAMAGES WHERE IT
IS LESS THAN 10% OF THE PURCHASE PRICE ...................................... 14

CONCLUSION................................................................................................................17

# TABLE OF AUTHORITIES

Page

## CASES

B. Lewis Productions, Inc. v. Angelo, 2008 WL 1826486 *3
(April 22, 2008 S.D.N.Y.)........................................................................................... 10

Banque Arabe et Internationale D'Investissement v. Md. Nat'l. Bank,
57 F.3d 146 (2d Cir. 1995)................................................................................. 9, 10, 11

Campers' World International, Inc. v. Perry Ellis International, Inc., 2002
WL 1870243 at *3 (S.D.N.Y. August 13, 2002) ........................................ 12

Charles W. v. Maul, 214 F.3d 350, 356 (2d Cir. 2000) .................................. 12

Feick v. Fleener, 653 F.2d 69, 75 & n.4 (2d Cir. 1981)................................. 4, 5

Francis v. Blaikie Group, 372 F.Supp. 741, 745 (S.D.N.Y. June 6, 2005).................................. 12

Harsco Corp. v. Segui, 91 F.3d 337, 345 (2d Cir. 1996) ................................. 8

Hegner v. Reed, 2 A.D.3d 683, 685, 770 N.Y.S.2d 87, 90 (2d Dept. 2003) ................................ 16

I. Meyer Pincus & Assoc., P.C. v. Oppenheimer & Co., Inc., 936 F.2d 759, 762
(2d Cir. 1991)............................................................................................. 6

Karl Springer Ltd. v. Benzl Properties, Inc., 1989 WL 81133 (S.D.N.Y. July 17, 1989) ............ 15

Lipin v. Hunt, 538 F.Supp. 2d 590 (S.D.N.Y. 2008).............................................. 4, 14

Luce v. Edelstein, 802 F.2d 49, 54 (2d Cir. 1986)........................................... 12

Maxton Builders, Inc. v. Lo Galbo, 68 N.Y.2d 373, 509 N.Y.S.2d 507 (1986).................... 15, 16

Micciche v. Homes By Timbers, Inc., 18 A.D.3d 833-834, 796 N.Y.S.2d 628-629
(2d Dept. 2005) ................................................................................... 16

Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993) ........................... 12

NYSE Specialists Secs. Litig., 503 F.3d 89, 95 (2d Cir. 2007)...................................... 4

Price v. Batkowiak, 729 F.Supp 14 (S.D.N.Y. 1989)................................................ 16

Sado v. Ellis, 882 F.Supp 1401, 1408 (S.D.N.Y. 1995) ............................................ 14

Sazerac Company, Inc. v. Falk, 861 F. Supp. 253, 257 (S.D.N.Y. 1994) .................................. 5, 6

Terwilliger v. Terwilliger, 206 F.3d 240 245-246 (2d Cir. 2000) .................................................. 6

United Artists Theater Circuit, Inc. v. Sun Plaza Enterprise Corp., 352 F.Supp.2d 342,
    351 (E.D.N.Y. 2005)............................................................................................................. 8

United States ex rel. Barmak v. Sutter Corp., 2003 WL 21436213 at *4 (S.D.N.Y.
    June 20, 2003)..................................................................................................................... 12

Verolla v. Beechwood Carmen Building Corp., 43 A.D.3d 913, 841 N.Y.S.2d 610
    (2d Dept. 2007)................................................................................................................... 16

## RULES

Federal Rules of Civil Procedure 9(b) ......................................................... 1, 12, 13, 14

Federal Rules of Civil Procedure 12(b)(6)............................................... 1, 5, 6, 10, 12

Pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b), defendants Ronald Lusker and Marilyn Kocher Lusker (together, the "Luskers") respectfully submit this Memorandum of Law and the accompanying affidavit of Barry M. Karson, Esq. ("KA") in support of their motion to dismiss the complaint in this case, as to them. The Karson Affidavit is submitted solely to provide two documents to the Court: Exhibit 1, the complaint; and Exhibit 2, the Contract of Sale – Cooperative Apartment dated March 30, 2007 (the "Contract"), on which Contract the captioned case is based.

## PRELIMINARY STATEMENT

In this lawsuit, plaintiff Christian Stokes ("Stokes") has sued the Luskers in connection with the Contact. In the Contract, the Luskers agreed to sell Stokes the "Unit," which was defined in the Contract as "Unit 1R, including the North Gallery and westerly 2/3 of Cellar." The Unit is contained in the building located at 85-87 Mercer Street, New York, New York (the "Building"). KA, Ex. 1, ¶1; Ex. 2, ¶¶1.7 and 1.8. Stokes agreed to pay the Luskers $14 million for the Unit and provided an initial deposit of $250,000.00 (the "Initial Deposit"). KA, Ex. 2, ¶1.15.

Defendant 85-87 Mercer Street Associates, Inc. ("MSA") is the cooperative corporation which owns the Building. KA, Ex. 2, ¶1.6. Defendant Andrews Building Corp. ("ABC") is the managing agent of the Building. Defendant Eric Malley ("Malley") is the real estate agent who introduced Stokes to the Luskers, and the Malley Group ("MG") is Malley's real estate brokerage corporation. KA, Ex. 1, ¶¶5, 6, 9, 10 and 11; Ex. 2, ¶¶1.4 and 1.5.

Defendant Steven Ebert, Esq. ("Ebert") is the attorney who represented Stokes on the Contract. Ebert is a member of the defendant law firm, Ebert & Associates ("EA"). KA, Ex. 1, ¶¶7 and 8; KA, Ex. 2, ¶1.2.1 and 1.2.2.

1

In his complaint, Stokes describes his case as being against various parties and as alleging "breach of contract with regard to a real estate transaction." Stokes believes he has alleged claims for "breach of contract, negligence, and fraud with inducement [sic], fraud, and professional malpractice." KA, Ex. 1, ¶1. Stokes' first cause of action is unlabelled and appears to attempt to state a claim for fraud and conspiracy against the Luskers. KA, Ex. 1, ¶¶13-23. Likewise, the second cause of action is unlabelled but seems to be against the Luskers and is for the "return of the contract deposit of $250,000.00 under the following legal theories: unjust enrichment, fraudulent inducement and violation against the policy of penalties and/or forfeiture." KA, Ex. 1, ¶¶24 and 25.

The third cause of action is labeled as being against MSA and ABC, while the fourth cause of action is denominated to be against Malley and MG. Finally, the fifth cause of action is titled as against Ebert and E&A. KA, Ex. 1, ¶¶26-34.

Point 1 of this Memorandum, pp.6-8, shows that not only has Stokes not stated a claim for breach of contract against the Luskers in the complaint, but that, based on the allegations of the complaint and the terms of the Contract, it is Stokes that breached the Contract. As demonstrated in Point 2 of this Memorandum, pp. 8-14, Stokes has not stated a claim against the Luskers for fraud, fraudulent inducement or conspiracy based on the Luskers not telling him of a purported restriction in MSA's by-laws as to leasing to a commercial tenant.

Point 2A of this Memorandum, pp. 8-10, reflects that Stokes agreed in the Contract that he had examined and was satisfied with MSA's by-laws, or assumed the risk of not having examined those by-laws. Based on Stokes's argument concerning his knowledge of the by-laws, he could not reasonably rely on the Luskers to tell him about any restrictions in those by-laws and therefore has not stated a claim for fraud or fraudulent inducement. Likewise, Point 2B of this Memorandum, p. 11, demonstrates that the Luskers had no duty to tell Stokes about any

purported leasing restriction in the by-laws, and therefore no claim for fraud is stated since the Luskers did not breach a duty to Stokes.

Moreover, Point 2C of this Memorandum, pp. 12-14, reflects that Stokes has not stated claims of fraud or conspiracy since his claims are not stated with sufficient particularity. Point 2C shows that Stokes failed to specify the who, what, when and where of the alleged fraudulent omissions and/or statements of which he accuses the Luskers, and of the claimed conspiracy between the Luskers and MSA, and therefore his claims are insufficient.

Further, as Point 3 of this Memorandum, pp. 14-17, establishes, Stokes is not entitled to a return of the Initial Deposit since he breached the Contract by not paying the additional $750,000.00 deposit required by the Contract on August 1, 2007, for which additional deposit time was of the essence, and not closing on the Unit on October 1, 2007, for which closing, time was also of the essence. Thus, the liquidated damages clause of the Contract and the law provide that the Luskers can keep the $250,000.00 Initial Deposit which is less than 2% of the purchase price, and the Luskers are not unjustly enriched for keeping it, nor is it an illegal penalty.

### FACTUAL BACKGROUND

The facts of this case are straightforward, and establish that Stokes failed to provide the Luskers the additional $750,000.00 deposit under the Contract on August 1, 2007, for which time was of the essence, or to close the transaction as required by the Contract on October 1, 2007, for which closing time was also of the essence.   Stokes apparently breached the contract because he could not afford the Unit without renting it to a commercial retailer, though he represented that he could afford it without that requirement. KA, Ex. 2, ¶¶ 5, 31 and 35B.

3

The pleaded facts and the Contract show that Stokes examined and was satisfied with MSA's by-laws, or assumed the risk of not having examined those by-laws, and that Stokes did not require in the Contract that he be permitted to rent the Unit to a commercial tenant. KA, Ex. 2 ¶¶5. Stokes agreed in the Contract that no representation which was not in the Contract could be relied on, and he represented to the Luskers that he could afford the Unit, without requiring that he be permitted to lease the Unit to a commercial tenant to afford it. KA, Ex. 2A, ¶¶14.1, 31 and B5B.

Solely, for the purposes of this motion, the allegations of Stokes' complaint must be taken as true, except for those allegations that are conclusory or which are contradicted by the Contract, which Contract Stokes has relied on in bringing his lawsuit. NYSE Specialists Secs. Litig., 503 F.3d 89, 95 (2d Cir. 2007); Feick v. Fleener, 653 F.2d 69, 75 & n.4 (2d Cir. 1981); and Lipin v. Hunt, 538 F.Supp. 2d 590, 598-599 (S.D.N.Y. 2008).

Stokes intended to invest in New York City real estate and contacted Malley of the Malley Group to do so. KA, Ex. 1, ¶¶14 and 15. In or about March 2007, Stokes was shown the Unit by Malley. During those showings, Malley advised Stokes that the Unit would be a perfect place for a commercial retailer and that the return on the rental that he could obtain for Stokes would be $1.1-$1.2 million, which would more than cover the mortgage that Stokes would need to purchase the Unit. KA, Ex. 1, ¶¶16 and 17.

Stokes alleges that at all times, Malley represented to him that the Unit would be more than suitable for a commercial retailer. KA, Ex. 1, ¶18. Stokes solicited Ebert of E&A to represent him in the purchase of the Unit. KA, Ex. 1, ¶19. Malley and Ebert knew that the only way Stokes could financially perform the terms of the Contract was to be able to rent the Unit to a commercial retailer. KA, Ex. 1, ¶20.

Stokes contends that the Unit could not be rented to a commercial tenant because of restrictions in MSA's by-laws and deed. KA, Ex. 1, ¶21. The Luskers did not advise Stokes that he could not rent the Unit to a commercial retailer. KA, Ex. 1, ¶22. According to Stokes, MSA approved Stokes to purchase the Unit though MSA knew he could not afford it. KA, Ex. 1, ¶23. Stokes would not and could not comply financially with the terms of the Contract. KA, Ex. 1, ¶¶23 and 28.

## APPLICABLE LEGAL STANDARD

Under Fed.R.Civ.P. 12(b)(6), the Court should dismiss this case against the Luskers if the complaint "fail(s) to state a claim upon which relief can be granted," against them. While a motion to dismiss pursuant to Rule 12(b)(6) generally requires the Court to accept the material allegations in the complaint as true and to draw reasonable inferences in the plaintiff's favor, when allegations are contradicted by the Contract on which the case is based, those allegations must be disregarded. Feick v. Fleener, 653 F.2d 69, 75 & n.4 (2d Cir. 1981) and Sazerac Company, Inc. v. Falk, 861 F. Supp. 253, 257 (S.D.N.Y. 1994). Stokes' claims against the Luskers fail under this standard.

## ARGUMENT

## POINT 1

### THE ONLY BREACH OF CONTRACT STATED BY THE ALLEGATIONS OF THE COMPLAINT AND THE TERMS OF THE CONTRACT IS STOKES'S BREACH, NOT THE LUSKERS

Stokes begins his complaint by describing what he believes the nature of his case to be, and in this regard he informs the Court that, "this is an action brought by Christian Stokes against various parties alleging breach of contract with regard to a real estate transaction." KA, Ex 1, ¶1.

To plead a breach of contract claim, Stokes is required to plead a contract; that he performed the contract; that the Luskers breached the contract; and damages. Terwilliger v. Terwilliger, 206 F.3d 240 245-246 (2d Cir. 2000). However, Stokes did not attach the Contract on which his lawsuit is based to his complaint, nor does he state any provision of the Contract the Luskers breached or how they breached it.

In the Second Circuit, where a plaintiff alleges a claim based on a written Contract, as is the case at bar, the Court may consider the Contract in ruling on a 12(b)(6) motion even if it was not attached to the complaint, but is supplied by the defendant. I. Meyer Pincus & Assoc., P.C. v. Oppenheimer & Co., Inc., 936 F.2d 759, 762 (2d Cir. 1991) and Sazerac Company, Inc. v. Falk, supra, 861 F. Supp. at 257. Paragraph 46 of the Contract required that Stokes pay an additional deposit to the Luskers of $750,000.00 on August 1, 2007, with time being of the essence (the "Additional Deposit"). KA, Ex. 2, ¶46.

Further, according to paragraph 47 of the Contract, the closing date for Stokes's purchase on the Unit was October 1, 2007, with time being of the essence (the "Closing"). KA, Ex. 2, ¶47. Stokes made the following representations to the Luskers in paragraph 31 of the Contract in relation to his ability to pay the $14 million purchase price, as well as the $13 million balance due on October 1, 2007 ("the Balance"):

6

31.1.1    [Stokes] has, and will at Closing have, available unencumbered cash and cash equivalents (including publicly traded securities) in a sum at least equal to (and having a then current value of) the Balance [$13 million]; and

31.1.2    Purchaser has, and will at and immediately following the Closing, have a positive net worth.

31.1.3    The maintenance and the monthly amount of the Assessment (if any) do not aggregate more than 25% of the current total gross monthly income of the individuals comprising the Purchaser.

KA, Ex. 2, ¶31.

Moreover, paragraph 49 of the Contract provides:

... <u>Purchaser [Stokes] acknowledges and agrees that in the event that purchaser fails to pay the Additional Deposit [$750,000.00] by August 1, 2007, or fails to close this transaction by the Closing Date [October 1, 2008], Time Being Of The Essence with respect to each event, either of such events shall constitute a material default by Purchaser, whereupon this Agreement shall be deemed terminated without any action or notice by Seller [the Luskers]. Seller shall be entitled to retain the Deposit and Additional Deposit, as the case may be, together with interest earned thereon, if any, as liquidated damages</u> (Seller's actual damages being difficult or impossible to ascertain) and Seller specifically hereby waives any and all claims that may exist with respect thereto. In the event of such termination, neither party shall have any further rights, obligations, or liabilities to or against the other with respect to this Agreement. [Emphasis added.]

KA, Ex. 2, ¶49.

<u>In the Complaint, Stokes admits that he would not and could not comply financially with the terms of the Contract.</u> KA, Ex. 1, ¶¶23 and 28. Therefore, Stokes admits to not paying the Additional Deposit and the Balance. Thus, Stokes, not the Luskers, breached the contract, and in accordance with paragraph 49, the Luskers were entitled to keep the Initial Deposit as liquidated damages, without any action or notice. Since Stokes has not stated a breach of contract claim against the Luskers, the complaint, including its first and second causes of action, must be dismissed against them.

7

## POINT 2

### STOKES'S CLAIMS OF FRAUD, FRAUDULENT INDUCEMENT, AND CONSPIRACY FAIL BASED ON THE TERMS OF THE CONTRACT AND THE ALLEGATIONS OF THE COMPLAINT

**A.    Under the Contract's Terms, Stokes Could Not Justifiably Rely On the Luskers To Tell Him He Could Not Rent The Unit To A Commercial Retailer And Therefore He Has Not Stated a Claim for Fraud Or Fraudulent Inducement.**

The elements of common law fraud are: the making of a material false representation or the omission of a material fact; with knowledge of its falsity and intent to defraud; <u>leading to reasonable reliance on the part of the plaintiff</u>; and actual damages as a result of such reliance. <u>United Artists Theatre Circuit, Inc. v. Sun Plaza Enterprise Corp.</u>, 352 F.Supp.2d 342, 351 (E.D.N.Y. 2005). In <u>Harsco Corp. v. Segui</u>, 91 F.3d 337, 345 (2d Cir. 1996), the Second Circuit stated that a fraud claim cannot proceed where allegations of fraud were directly contradicted by written documents which were the product of an arm's length negotiation.

The central allegations of Stokes' claims for fraud and fraudulent inducement as to the Luskers appear to be as follows:

> "Unbeknownst to plaintiff at all times, <u>the Premises [the Unit] could not be rented to a commercial tenant because of restrictions within</u> both the Coop By-Laws and Deed." [Emphasis added.]

> At all times, the Sellers, Ronald Lusker and Marilyn Kocher Lusker knew that plaintiff [Stokes] wanted to rent said Premises [Unit] to a commercial retailer but, not only did they not advise plaintiff but conspired with 85-87 Mercer Street Associates, Inc. and Andrews Building Corporation in order to wrongfully obtain the deposit money plaintiff made in respect to such agreement."

KA, Ex. 1, ¶¶21 and 22.

However, in the Contract, Stokes represented that he knew what was in MSA's by-laws, or assumed the risk of what was in them. Paragraph 5 of the Contract is titled, "Corporate Documents" and states:

> Purchaser has examined and is satisfied with, or (except as to any matter represented in this Contract by Seller) accepts and assumes the risk of not having examined, the Lease, the Corporation's [MSA's] Certificate of Incorporation, By-Laws, House Rules, minutes of shareholders and directors meetings … [Emphasis added.]

KA, Ex. 2, ¶5.

In addition, Stokes agreed that he would only rely on the representations and understandings contained in the Contract. In that regard, Paragraph 14 of the Contract is titled, "Entire Agreement, Modification," and provides:

> All prior oral and written representations, understandings and agreements had between the Parties with respect to the subject matter of this Contract … are merged in this Contract which alone fully and completely expresses the Parties … agreement.

KA, Ex. 2, ¶14.1.

Likewise, also contradicting Stokes claimed reliance on the Luskers to inform him of any restriction on leasing contained in MSA's by-laws is paragraph 35B of the Contract, which states:

> Purchaser acknowledges having entered into this Contract without relying on any promises, statements, representations, warranties, conditions or other inducements, express or implied, oral or written, not set forth herein.

KA, Ex. 2, ¶35 B.

Therefore, based on the terms of the Contract, Stokes could not reasonably rely on the Luskers to tell him whether MSA's by-laws restricted him from leasing the Unit to a commercial retailer. Stokes agreed that he knew the contents of MSA's by-laws, or assumed the risk of their contents, and agreed that he was only relying on what was in the Contract. In Banque Arabe et

9

Internationale D'Investissement v. Md. Nat'l. Bank, 57 F.3d 146, 156 (2d Cir. 1995), the Second

Circuit found that for a plaintiff to succeed on a claim of fraud, the plaintiff must "establish that

it actually relied on the disclosure or lack thereof, and that such reliance was reasonable and

justifiable."

In accordance with Banque Arabe, since Stokes was on notice of MSA's by-laws and

proceeded with the transaction after reviewing those by-laws, or without reviewing them, he

accepted their contents. If he reviewed the by-laws, he could have inserted language in the

Contract requiring that he be permitted to lease the Unit to a commercial retailer. If he did not

review the by-laws, he assumed the risk that the by-laws contained the purported leasing

restriction, and he cannot now complain that he has been defrauded.

As the District Court found in B. Lewis Productions, Inc. v. Angelou, 2008 WL 1826486

*3 (April 22, 2008 S.D.N.Y.), when a plaintiff's, like Stokes, own lack of due care is responsible

for his not being aware of an alleged fact contained in a document, like MSA's by-laws, of

which document the plaintiff was aware and to which he had access, the court will not find that

the plaintiff reasonably relied on the other party to the transaction concerning that fact.

Therefore, in accordance with Banque Arabe and B. Lewis, Stokes cannot establish the

reasonable reliance element of fraud or fraudulent inducement. Thus, pursuant Fed.R.Civ.P.

12(b)(6) the first and second causes of action of the complaint must be dismissed as against the

Luskers.

10

**B.     Due To Stokes's Access To The By-Laws And That There Was Not A Fiduciary Or Confidential Relationship Between Stokes And The Luskers, The Luskers Had No Duty To Tell Stokes About the Claimed Leasing Restriction.**

In Banque Arabe, the Second Circuit found that in relation to delay of the regulatory approval of the condominium conversion plan at issue in that lawsuit, the plaintiff had access to the same information as the defendant to inform itself of the status of the conversion plan. To the extent the defendant was not in a fiduciary or confidential relationship with the plaintiff, the Second Circuit determined that the defendant did not have a duty to disclose the delay of the regulatory approval to the plaintiff.

At bar, the Luskers were not in a fiduciary or confidential relationship with Stokes. Moreover, Stokes agreed that he had examined and was satisfied with the by-laws, or accepted and assumed the risk of their contents and was not relying on any representation not contained in the Contract. KA, Ex. 2, ¶¶5, 14 and 35B. Therefore, the Luskers had no duty to specifically inform Stokes of a leasing restriction allegedly contained in MSA's by-laws.

As was true of the plaintiff in Banque Arabe having access to the same regulatory information concerning the conversion plan as the defendant in that case, in the instant case, the same information concerning MSA's by-laws was available to Stokes as was available to the Luskers. Thus, Stokes was obligated to protect himself if the alleged leasing restriction was so important to him. 57 F.3d at 156-157. Therefore, the Luskers had no duty to tell Stokes about the alleged lease restriction and his fraud claims must be dismissed.

11

C.    **Pursuant To Fed. R. Civ. P. 12(b) (6) And Fed. R.Civ. P. 9(b), Stokes's Claims Of Fraud and Conspiracy Against The Luskers Must Be Dismissed Since They Are Not Stated With Sufficient Particularity.**

Pursuant to Rule 12(b)(6), a motion to dismiss generally requires that the Court accept as true all well-pleaded material allegations of the complaint and draw all reasonable inferences in favor of the non-moving party. Francis v. Blaikie Group, 372 F.Supp. 741, 745 (S.D.N.Y. 2005). See also, Charles W. v. Maul, 214 F.3d 350, 356 (2d Cir. 2000). However, Fed.R.Civ.P.9(b) provides that:

> "[I]n all averments of fraud or mistake, the circumstances constituting fraud or mistakes shall be stated with particularity."

In the Second Circuit, for a claim to meet the pleading requirements of Rule 9(b) it must "(1) specify the statements that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent". Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993). In other words, the Second Circuit requires that a plaintiff pleading fraud, plead the who, what, when and where of its allegations. United States ex rel. Barmak v. Sutter Corp., 2003 WL 21436213 at *4 (S.D.N.Y. June 20, 2003).

Thus, Rule 9(b) is an exception to the generally liberal scope of pleadings allowed by Fed.R.Civ.P. 8. Luce v. Edelstein, 802 F.2d 49, 54 (2d Cir. 1986). In Luce, the Second Circuit found that the plaintiff's allegations were deficient where they did not connect particular representations to individual defendants. Therefore, where multiple defendants are alleged to have committed fraud, the complaint must "allege specifically the fraud perpetrated by each defendant." Campers' World International, Inc. v. Perry Ellis International, Inc., 2002 WL 1870243 at *3 (S.D.N.Y. August 13, 2002).

Under these standards, the allegations contained in the first and second causes of action fall well short of the Rule 9(b) requirements for alleging fraud against the Luskers. In the first cause of action of the complaint, Stokes contends that the Luskers did not specifically tell him that he could not lease the Unit to a commercial tenant, and that MSA approved Stokes as a purchaser so the Luskers could fraudulently retain his Initial Deposit. KA, Ex. 1, ¶23. In his second cause of action, Stokes claims that the Luskers did not inform him that he could not lease the Unit to a commercial tenant to fraudulently induce him into the Contract. KA, Ex. 1, ¶23.

Nevertheless, Stokes conclusorily alleges that defendant Ronald Lusker ("Ron") and Marilyn Kocher Lusker ("Marilyn") "knew at all times" that he wanted to rent the Unit to a commercial retailer, and "did not advise him," but "conspired" with MSA to keep his Initial Deposit. KA, Ex. 1, ¶22. However, Stokes does not indicate when and where either or both Ron and Marilyn were told about Stokes's desire to rent to a commercial retailer, or who told either of them this. Stokes does not identify what "advice" Ron and Marilyn should have given him; or with whom Ron and Marilyn conspired on behalf of MSA; or what MSA had to gain by being part of a conspiracy with the Luskers for the Luskers to keep Stokes's Initial Deposit.

As the Court can see, Stokes does not specify the who, what, when or where as to how Ron or Marilyn knew of his desire to rent to a commercial tenant or of a conspiracy with MSA, but merely lumps Ron, Marilyn and MSA together. Only in conclusory allegations does Stokes claim that Ron and Marilyn fraudulently induced him to enter into the Contract to further an undetailed conspiracy among Ron, Marilyn and MSA to keep the Initial Deposit.

Stokes claims that MSA knew he could not afford the Unit without being able to lease to a commercial retailer but does not link Ron and/or Marilyn to this information. Thus, Stokes has failed to state claims against Ron and Marilyn for fraud or fraudulent inducement with sufficient

particularity under Rule 9(b), and the first and second causes of action must be dismissed as against Ron and Marilyn.

Further, there is no separate tort of civil conspiracy under New York law. Sado v. Ellis, 882 F.Supp 1401, 1408 (S.D.N.Y. 1995). To plead the existence of a civil conspiracy, Stokes has to allege "an underlying tort"; an agreement between two or more parties; an overt act in furtherance of the agreement; the parties' intentional participation in furtherance of a plan or purpose; and resulting damages. Lipin v. Hunt 558 F.Supp 590, 602 (S.D.N.Y. 2008).

Thus, since Stokes has failed to sufficiently allege a fraud claim, the conspiracy claim must fail. Moreover, nowhere in the complaint does Stokes link Ron and Marilyn's alleged failure to disclose a restriction in the by-laws with MSA's knowledge of Stokes' inability to afford the Unit without leasing to a commercial retailer, and Stokes does not allege why MSA would participate in a plan for the Luskers to wrongfully take the Initial Deposit. Therefore, Stokes has failed to state a claim for conspiracy.

## POINT 3

### THE SECOND CAUSE OF ACTION MUST BE DISMISSED BECAUSE IT IS WELL SETTLED NEW YORK LAW THAT THE LUSKERS HAVE THE RIGHT TO RETAIN THE INITIAL DOWN PAYMENT AS LIQUIDATED DAMAGES WHERE IT IS LESS THAN 10% OF THE PURCHASE PRICE

According to Stokes's second cause of action, the Luskers are "obligated to return the deposit of $250,000.00 under the following legal theories: unjust enrichment, fraudulent inducement and violation against the policy of penalties and/or forfeiture." KA, Ex. 1, ¶25. The Luskers have shown in Point 2, pp. 8-14, of this Memorandum that Stokes has failed to state a claim for fraudulent inducement.

14

Further, Stokes disregards his agreement in the Contract that his damages to the Luskers under the Contract are limited to the Contract deposit, which Stokes agreed constituted "a fair and reasonable amount of compensation for [the Luskers'] damages and was not a penalty." KA, Ex. 2, ¶13.1. See, also, KA, Ex. 2, ¶49. At bar, Stokes seeks the return of his initial $250,000.00 down payment on a $14 million transaction. Thus, this deposit was less than 2% of the purchase price. KA, Ex. 1, ¶25 and Ex. 2, ¶1.16.

For more than a century, it has been well settled New York law that a purchaser who defaults on a real estate contract without lawful excuse cannot recover the down payment. Maxton Builders, Inc. v. Lo Galbo, 68 N.Y.2d 373, 378, 509 N.Y.S.2d 507, 509 (1986). New York courts have said that a seller's retention of a deposit is neither unjust enrichment nor an unenforceable penalty, especially where the down payment is 10% or less. Id., 68, N.Y.2d at 381-382, 509 N.Y.S.2d at 511-512.

In Karl Springer Ltd. v. Benzl Properties, Inc., 1989 WL 81133 (S.D.N.Y. July 17, 1989) the District Court found that the defendant purchaser of a condominium unit in Trump Towers had breached the contract to purchase the unit for $3 million, on which contract a $300,000 down payment was to be paid by the purchaser. The purchaser stopped payment on the down payment check.

Based on Maxton, the District Judge in Karl Springer ruled that the plaintiff was entitled to judgment of at least the $300,000 down payment against the purchaser. Id., 1989 WL 81133 at *3. The District Court explained that the underlying purpose of Maxton was to arrive at a workable rule in light of the recognized difficulty of estimating actual damages and the general acceptance of the traditional 10% down payment as a reasonable amount. Id, 1989 WL 81133 at *4.

In <u>Hegner v. Reed</u>, 2 A.D.3d 683, 685, 770 N.Y.S.2d 87, 90 (2d Dept. 2003), the court found that where the purchaser had anticipatorily breached a contract to purchase a home for $1,300,000.00, the sellers' retention of the $130,000.00 down payment was neither unjust enrichment nor an unenforceable penalty. Likewise, the court in <u>Verolla v. Beechwood Carmen Building Corp.</u>, 43 A.D.3d 913, 841 N.Y.S.2d 610 (2d Dept. 2007) ruled that a liquidated damages deposit of approximately 14% was not an unenforceable penalty.

The most telling New York case on the issue of the Luskers' right to retain the Initial Deposit is the decision in <u>Micciche v. Homes By Timbers, Inc.</u>, 18 A.D.3d 833-834, 796 N.Y.S.2d 628-629 (2d Dept. 2005). In the <u>Micciche</u> case, even where the property at issue may have increased in value since the breach by the buyer, the seller was entitled to keep the deposit as a liquidated damages amount.

The <u>Micciche</u> decision is in accord with the Southern District Judge's decision in <u>Price v. Bartkowiak</u>, 729 F.Supp 14 (S.D.N.Y. 1989). The <u>Price</u> case involved the sale of a home in Pelham, New York, where the seller breached the contract of sale.

In <u>Price</u>, the District Judge decided that the seller was entitled to obtain more than the purchaser's 10% down payment. Citing <u>Maxton</u> in support, the District Judge ruled that in New York, a seller of real property is entitled to retain a defaulting buyer's 10% down payment even if the seller's actual damages were less than that amount. <u>Id.</u>, 729 F.Supp. at 15.

Paragraphs 13.1 and 49 of the Contract reflect that Stokes agreed to the Initial Deposit as liquidated damages, and as a fair and reasonable amount of compensation if he did not timely provide the Additional Deposit, or close on the Closing Date. Stokes further agreed that the Luskers were entitled to keep the Initial Deposit, without any action or notice on their part, once Stokes breached the Contract, which he did as shown in Point 1 of this Memorandum, pp. 6-8. Thus, the second causes of action of the complaint must be dismissed as against the Luskers

since the Luskers are entitled to the Initial Deposit as lawful liquidated damages, and they are not

unjustly enriched by keeping it, nor have they exacted an illegal penalty from Stokes.

## CONCLUSION

For all of the foregoing reasons, we respectfully request that the Court dismiss this action

with prejudice as against the Luskers.

Dated:   New York, New York
         June 19, 2008

                              Respectfully submitted,

                              KARSON & LONG, LLP

                              By:
                                   Barry M. Karson (BK-0177)
                              Attorneys for Defendants
                              Ronald Lusker and Marilyn Kocher Lusker
                              600 Third Avenue, 15th Floor
                              New York, New York 10017
                              (212) 490-8413

Of Counsel:

David G. Tobias, Esq.

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------------- x

CHRISTIAN STOKES,                                   :

                                                    :         08 Civ. 3667 (CM) (DEF)

                              Plaintiff,            :

                                                    :

   - against -                                      :

                                                    :         **AFFIDAVIT OF SERVICE**

RONALD LUSKER, MARILYN KOCHER LUSKER, EBERT        :
& ASSOCIATES, STEVEN EBERT, ESQ., ANDREWS          :
BUILDING CORP., MALLEY GROUP, ERIC MALLEY,         :
85-87 MERCER STREET ASSOCIATES, INC.,              :

                                                    :

                              Defendants.           :

---------------------------------------------------------------------------- x

STATE OF NEW YORK    )
                     ) ss.
COUNTY OF NEW YORK   )

        ELAINE MILLER, being duly sworn, deposes and says:

        1.      I am not a party to the action, am over 18 years of age and reside in Dumont, New

Jersey 07628.

        2.      On June 24, 2008, I served a true copy of a Memorandum of Law of Defendants

Ronald Lusker and Marilyn Kocher Lusker in Support of Their Motion to Dismission, dated June

19, 2008, in the above referenced matter, by regular mail in a pre-paid wrapper at a depository

under the exclusive care and custody of the United States Post Office within New York State,

addressed to Joseph H. Neiman, Esq., Attorney for Plaintiff, at 179-36 80th Road, Jamaica Estate,

New York 11432.

                                                    _Elaine Miller_
                                                    ELAINE MILLER

Sworn to before me this
17 day of June, 2008

_____
        Notary Public

DAVID G. TOBIAS
Notary Public, State of New York
No. 02TO4741211
Qualified in New York County
Commission Expires August 6, 2009