UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------- X
CHRISTIAN STOKES,

                              Plaintiff,            08 Civ. 3667 (CM) (DFE)

           - against -

RONALD LUSKER, MARILYN KOCHER LUSKER,
EBERT & ASSOCIATES, STEVEN EBERT, ESQ.,
ANDREWS BUILDING CORP., MALLEY GROUP,
ERIC MALLEY, 85-87 MERCER STREET
ASSOCIATES, INC.

                              Defendants.
------------------------------------------------- X


**DEFENDANTS' EBERT & ASSOCIATES and STEVEN EBERT, ESQ.'S,
MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO
DISMISS PLAINTIFF'S COMPLAINT**


WILSON, ELSER, MOSKOWITZ,
   EDELMAN & DICKER LLP
*Attorneys for Defendants*
*Ebert & Associates and Steven Ebert, Esq.*


Of Counsel:
   *Thomas W. Hyland*
   *Lauren J. Rocklin*

3273183.1

TABLE OF CONTENTS

                                Page

Table of Authorities ................................................................................................. ii

Introduction ............................................................................................................. 2

Preliminary Statement ............................................................................................. 2

Statement of Facts ................................................................................................... 3

Argument ................................................................................................................. 7

    I. The Undisputed Terms Of The Contract Belie Plaintiff's Allegation That He Was Unaware That A Portion Of The Premises Was Restricted To Residential Use ............................................................................. 8

        A. The Contract and Its Attendant Documents Enlightened Plaintiff That A Portion of the Premises Was Restricted to Residential Use ............................................................................. 8

        B. As A Matter of Law, Ebert Is Not Liable For Plaintiff's Dissatisfaction With The Contract To Which He Assented ............................................................................. 10

    II. Plaintiff's Claims Fail To Demonstrate His Purported Damages Were The Proximate Cause Of A Breached Duty Owed By Ebert ............................ 13

Conclusion ............................................................................................................. 15

# TABLE OF AUTHORITIES

**STATUTES**

Fed. R. Civ. Pro 10(c)...................................................................................................2
Fed. R. Civ. P. 12(b)(6)........................................................................................2, 8, 15
Fed. R. Civ. P. 56..........................................................................................................2, 8

**CASES**

Beattie v. Brown & Wood, 243 AD2d 395 (1st Dept. 1997).............................................10, 11

Benderson Development Company, Inc. v. United States Postal Service, 1996 U.S.Dist. LEXIS 16919)..............................................................................................................13

C&F Pollution Control v. Fidelity & Cas. Co., 222 A.D.2d 828 (3rd Dept. 1995) ..........13

Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991).....................8

Faden v. Satterlee Stephens Burke & Burke, 2008 NY Slip Op 5651, 858 N.Y.S.2d 914 (2d Dept. 2008).............................................................................................................12

Flutie Bros. LLC v. Hayes, 2006 U.S.Dist. LEXIS 31379 (S.D.N.Y. 2006) .......................7

Geller v. Fairmont Estates, 172 A.D.2d 915 (3d Dept. 1991) ...........................................13

Goldman v. Belden, 754 F.2d 1059 (2d Cir. 1985) ............................................................8

Hatfield v. Herz, 109 F. Supp. 2d 174 (S.D.N.Y. 2000).....................................................9

I. Meyer Pincus & Assoc., P.C. v. Oppenheimer & Co., 936 F.2d 759, 762 (2d Cir. N.Y. 1991)........................................................................................................................3, 8

Kaliman, LLC v. Berger, Gorin & Leuzzi, 307 A.D.2d 813, 763 N.Y.S.2d 52 (1st Dept. 2003).........................................................................................................................12

Kirk v. Heppt, 532 F. Supp.2d 586, (S.D.N.Y. 2008) .........................................................7

Lunney & Crocco v. Wolfe, 243 A.D.2d 348, 663 N.Y.S.2d 164 (1st Dept. 1995)....11, 12

Nina Penina Inc., v. Njoku, 2005 N.Y. Misc. LEXIS 3308 (Sup. Ct. New York Cty., 2005).........................................................................................................................14

Pimpinello v. Swift & Co., 253 N.Y. 159, 170 N.E. 530 (1930) .......................................11

Rosner v. Paley, 65 N.Y.2d 736, 738 (1985) ......................................................................7

Schwarz v. Shapiro, 202 A.D.2d 187, 608 N.Y.S.2d 210 (1st Dep't 1994) ......................11

Schweizer v. Mulvehill, 93 F. Supp. 2d 376, 395 (S.D.N.Y. 2000) ...................................... 7

Sloane v. Reich, 1994 U.S. Dist. LEXIS 2851 (S.D.N.Y. 1994) ....................................... 13

Tatar and Oneal v. Gold Inc., et. al., 2002 U.S.Dist. LEXIS 16588
    (S.D.N.Y. 2002) ........................................................................................................... 10

Tortura v. Sullivan Papain Block McGrath & Cannavo, P.C., 21 A.D.3d 1082, 1083, 803
    N.Y.S.2d 571 (2d Dep't 2005) ................................................................................. 7, 14

3287936.1

## INTRODUCTION

Defendants Ebert & Associates and Steven Ebert, Esq. (collectively referred to as "Ebert"), respectfully move to dismiss Plaintiff's Complaint (the "Complaint" or "Compl.") pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a cause of action upon which relief may be granted.[1] Alternatively, Ebert requests that this Court convert the instant motion to one for Rule 56 summary judgment and dismiss the complaint as against Ebert.

## PRELIMINARY STATEMENT

After failing to obtain the necessary financing for the purchase of a $14 million cooperative unit located at 85-87 Mercer Street in Manhattan (the "Premises"), Plaintiff initiated this action against the broker, the sellers, the cooperative board and his attorney, Ebert. The gravamen of the complaint appears to be that defendants knew that Plaintiff could only obtain the purchase money if the entire Premises could be leased to a commercial tenant, yet the defendants agreed to the sale knowing that a portion of the Premises was restricted to residential use. (Compl. ¶¶20-21).

The Complaint alleges that Ebert "failed to read the documents which would have enlightened Plaintiff" (Compl. ¶33) and that Ebert "failed to provide in Plaintiff's contract that Plaintiff would be free to rent to a commercial tenant." (Compl. ¶34). As a matter of law, however, Plaintiff's dissatisfaction with the agreement to which he freely assented is not a ground to recover against Ebert.

Conspicuously absent from the complaint is a copy of the Contract of Sale dated March 27, 2007 (the "Contract"). As a matter of undisputed fact, the Contract, its Riders, and the

---

[1] Ebert joins and incorporates by reference the motion to dismiss filed by co-defendants Eric Malley and the Malley Group as well as the motion to dismiss filed by co-defendants Ronald Lusker and Marilyn Kocher Lusker. See Fed. R. Civ. Pro 10(c).

2

3273183.1

Proprietary Lease (the "Lease") referenced therein, states that the unit which Plaintiff intended to purchase would remain split between residential and commercial uses. (Lease, ¶14).[2] There is no allegation, nor could one be pled, that Ebert told Plaintiff that the Contract and its Riders did not restrict use of the Premises, or that the plain terms of the Contract were not applicable. As such, Ebert cannot be liable for Plaintiff's failure to appreciate the plain terms of the Contract.

## STATEMENT OF FACTS

The Complaint alleges in pertinent part as follows:

1. Plaintiff Christian Stokes ("Plaintiff") contacted co-defendants Eric Malley of the Malley Group (collectively referred to as "Malley") to be his real estate broker for the purchase of property in New York City. (Compl. ¶¶ 10-11; 14-15).

2. In or about March of 2007, Malley showed a certain Coop unit located at 85-87 Mercer Street, New York, New York by Malley (the "Premises"). (Compl. ¶16). At that time, Malley advised Plaintiff that "this would be a perfect place for a commercial retailer and that the return on the rental…would more than cover the mortgage that Plaintiff would need to purchase the premises." (Compl. ¶¶16-17).

3. The Premises was owned by co-defendants Ronald Lusker and Marilyn Kocher Lusker, the sellers of the Premises, (the "Luskers" or the "Sellers").

4. Plaintiff "solicited [Ebert] to represent him in the matter in the purchase of the premises to protect his legal interest and advise him on the purchase of said premises" (Compl. ¶19).

5. On March 30, 2007, Plaintiff and the Sellers entered into a Contract of Sale (the "Contract") for the sale and purchase of the Premises. The Premises had two spaces: a commercial space and a residential space (Contract, Rider *passim*, Lease ¶14).

---

[2] The complaint fails to annex the Contract and the Proprietary Lease. However, it has been held that where the complaint fails to annex a pertinent document, the defendant may introduce it as an exhibit in a motion attacking the complaint. See I. Meyer Pincus & Assoc., P.C. v. Oppenheimer & Co., 936 F.2d 759, 762 (2d Cir. 1991).

3

3273183.1

6.  The Contract recited a purchase price of $14 million, a deposit of $250,000 (Contract ¶1.16) and that an Additional Deposit of $750,000 was due either (i) within 5 days following the sale of Plaintiff's condominium apartment located at 255 Hudson Street, New York, New York or (ii) August 1, 2007. (Rider ¶46).

7.  By notice dated July 27, 2007, the Board informed Plaintiff that it approved the sale of the Premises from the Luskers to Plaintiff on the condition that 1) any change to the use of the Premises must be approved in writing, 2) any tenant or sub-tenant of the Premises must be approved by the Board and 3) the Board will not approve any changes to the use of the Premises if doing so would imperil obtaining a Certificate of Occupancy. (Ebert Exh. C).

8.  Plaintiff could not obtain the financing and therefore "could not financially comply with the terms of the deal" and lost the $250,000 deposit as a result. (Compl. ¶30). By letter dated August 1, 2007, Ebert notified the Board that Plaintiff intended to cancel the Contract and sought return of the $250,000 deposit. (Ebert Exh. D). The deposit was not returned.

9.  Pursuant to the Contract, the Sellers warranted that

> The Lease is, and will at Closing be, in full force and effect and no notice of default under the Lease is now or will at Closing be in effect.

(Contract ¶4.1.3)

10. According to paragraph 5, the Plaintiff purchaser acknowledged:

> [Plaintiff] has examined and is satisfied with, or (except as to any matter represented in this Contract by Seller) accepts and assumes the risks of not having examined, the Lease, the Corporation's Certificate of Incorporation, By-laws House Rules, minutes of the shareholder's and director's meetings, most recent audited financial statement and most recent statement of tax deductions available to the Corporations shareholders.

(Contract ¶5)

11. The Contract obligated the purchaser Plaintiff

3273183.1

>    To, at the time of closing, execute and deliver to Seller and
>    the Corporation an agreement assuming the Lease, in the
>    form required by the Corporation.
>    (Contract ¶10.2.2)

12. According to the Second Rider to the Contract, the Sellers were obligated to promptly inform the purchaser Plaintiff of, *inter alia*, "any proposed amendment or modifications of the Lease, the Certificate of Incorporation, or the Corporation's By-Laws (Second Rider ¶R5).

13. The Lease referenced in the Contract is the "Proprietary Lease" between the Luskers and the Board and states in relevant part:

>    Under the current zoning laws, the Apartment Unit (excluding the North Gallery which is NYC Zoning Resolution-compliant retail gallery) may be used residentially only as joint living-work quarters for artists, and each unit must be occupied by an [sic] person certified as an artist by the New York City Department of Cultural Affairs or by a residential tenant determined by the New York City Loft Board to have occupied such unit as a "grandfathered tenant." Notwithstanding any other provision in the proprietary lease to the contrary, so long as the said zoning laws remain in effect, the shares allocated to these units and the proprietary lease appurtenant thereto may be transferred only to certified artists or to transferees who demonstrate, to the Lessor's satisfaction, that they will comply with the zoning restrictions limiting occupancy of the unit to certified artists or "grandfathered tenants." If the laws and regulations requiring restricting residential use only by certified artists are revoked, limited or otherwise changed, this paragraph (c) shall be automatically deemed to be broadened to permit any residential use then permitted. Notwithstanding the foregoing, the Lessee may use the Apartment Unit for other purposes provided that (i) the Lessee is solely responsible for all the costs and expenses in converting the Apartment Unit's use under the then applicable zoning and other laws or regulations which may pertain to the Apartment Unit; (ii) that the converted use is legal and permissible under such laws or regulations and (iii) does not violate such guidelines as may be imposed by the Board.

>    (Lease, ¶ 14(c)).

14.     The Contract contains several provisions that expressly stated that the sale was not contingent on Plaintiff obtaining financing and that the $250,000 deposit was non-refundable in the event of Plaintiff's failure to purchase. For example, Rider ¶49 states:

> Notwithstanding anything to the contrary contained in this Agreement, Purchaser acknowledges and agrees that in the event that Purchaser fails to pay the Additional Deposit by August 1, 2007, or fails to close this transaction by the Closing Date, Time Being Of The Essence with respect to each event, either of such events shall constitute a material default by Purchaser, whereupon this Agreement shall be deemed terminated without any action or notice by Seller, Seller shall be entitled to retain the Deposit and Additional Deposit, as the case may be, together with interest earned thereon, if any, as liquidated damages (Seller's actual damages being difficult or impossible to ascertain) and Seller specifically hereby waives any and all claims that may exist with respect thereto. In the event of such termination, neither party shall have any further rights, obligations or liability to or against the other with respect to this Agreement.

15.     The Contract also contains a merger clause which states that the writing embodies the whole agreement, and that no extrinsic representations have been made, or can be relied on, except those that appear in the writing, and (Contract, ¶14.1).

16.     The Contract also contains the following provision with regard to extrinsic representations made outside the four corners of the Contract:

> Purchaser acknowledges having entered into this Contract without relying upon any promises, statements representation, warranties, conditions or other inducements, express or implied, oral or written, set forth herein.

(Rider, ¶35(B))

17.     Plaintiff alleges the Luskers knew that Plaintiff wanted to rent the Premises to a commercial retailer, never advised Plaintiff of the space's restrictions, and wrongfully accepted the deposit money Plaintiff made in respect to such agreement. (Compl. ¶22).

18.     Plaintiff also alleges that the Premises Board, co-defendants 85-87 Mercer Street Associates, Inc., (the "Board"), "negligently approved" the purchase of the Premises or did so in

6

3273183.1

conspiracy with the other defendants because the Board was "aware that the Plaintiff would not and could not apply [sic] financially with the terms of the contract" (Compl. ¶23).

19. As against Ebert, the complaint alleges that Ebert "failed to read the documents which would have enlightened Plaintiff" (Compl. ¶33) and that Ebert "failed to provide in Plaintiff's Contract that Plaintiff would be free to rent to a commercial tenant." (Compl. ¶34).

## ARGUMENT

Preliminarily, the sole cause of action against Ebert, the fifth cause of action (Compl. ¶¶31-34) should be dismissed because it fails to articulate any discernable cause of action or allege specific factual allegations from which one could be inferred. Tortura v. Sullivan Papain Block McGrath & Cannavo, P.C., 21 A.D.3d 1082, 1083, 803 N.Y.S.2d 571 (2d Dep't 2005) (affirming the dismissal of a legal malpractice complaint which "fail[ed] to plead specific factual allegations demonstrating but for causation). However, to the extent that the complaint purports to assert a claim for "professional malpractice"[3] against Ebert (Compl. ¶1), the fifth cause of action is ripe for dismissal. Rosner v. Paley, 65 N.Y.2d 736, 738 (1985), Kirk v. Heppt, 532 F. Supp. 2d 586 (S.D.N.Y. 2008) (the sufficiency of legal malpractice complaint presents a question of law and may be determined by a trial court on a motion to dismiss), Schweizer v. Mulvehill, 93 F. Supp. 2d 376, 395 (S.D.N.Y. 2000) ("Mere speculation of a loss resulting from an attorney's alleged omissions is insufficient to sustain a prima facie case in malpractice").

As a matter of law and undisputed fact, the plain terms of the Contract are fatal to Plaintiff's allegation that Ebert "failed to read the documents which would have enlightened

---

[3] It is not clear what cause of action is alleged against Ebert (or the other defendants) but under New York law, most causes of action against attorneys would be folded into one claim for legal malpractice. Seippel v. Jenkens & Gilchrist, P.C., 341 F. Supp. 2d 363, 376 (S.D.N.Y. 2004) citing Mecca v. Shang, 258 A.D.2d 569, 570 685 N.Y.S.2d 458 (2d Dep't 1999) (dismissing fraud, misrepresentation, breach of fiduciary duty claims because they arise from the same facts as the malpractice claim).

7

Plaintiff." (Compl. ¶33). As a matter of law and undisputed fact, Plaintiff's allegation that Ebert "failed to provide in Plaintiff's contract that Plaintiff would be free to rent to a commercial tenant" (Compl. ¶34) is meritless. Including such a term would not have altered the outcome. Therefore, Plaintiff cannot establish "but for" causation. The law is intuitive in this matter: Ebert is not liable for the risk Plaintiff accepted in depositing $250,000 toward a $14 million purchase price knowing he could obtain financing only if a commercial tenant could be obtained.

I. **The Undisputed Terms Of The Contract Belie Plaintiff's Allegation That He Was Unaware That A Portion Of The Premises Was Restricted To Residential Use**

A. **The Contract And Its Attendant Documents Enlightened Plaintiff That A Portion of the Premises Was Restricted to Residential Use**

The Contract is conspicuously absent as an exhibit to the Complaint. However, a Rule 12(b)(6) motion is addressed to the face of the pleading, which is deemed to include any document attached to it as an exhibit, or any document incorporated in it by reference. Goldman v. Belden, 754 F.2d 1059 (2d Cir. 1985). And where, like here, a complaint fails to annex pertinent documents, the defendant may introduce it as an exhibit in a motion attacking the complaint. See I. Meyer Pincus & Assoc., P.C. v. Oppenheimer & Co., 936 F.2d 759, 762 (2d Cir. N.Y. 1991). It is submitted therefore that this Court may consider the Contract and its Riders when ruling on the instant motion.[4]

To plead malpractice, Plaintiff must establish: (1) that the attorney had a duty to use such skill, prudence, and diligence as other members of this profession commonly possess and exercise, (2) a breach of that duty, (3) a proximate causal connection between the negligent

---

[4] Alternatively, Ebert requests that this Court convert this 12(b)(6) motion to a Rule 56 summary judgment motion and consider the documents submitted in the declaration of Steven Ebert as evidence. Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991) (holding that courts ordinarily convert Rule 12(b)(6) motions to Rule 56 motions but the rationale for conversion is largely mooted if the non-moving party has notice of the extraneous evidence).

8

3273183.1

conduct and the resulting injury, (4) actual loss or damage resulting from the attorney's malpractice. Hatfield v. Herz, 109 F. Supp. 2d 174 (S.D.N.Y. 2000).

There can be no proximate causal connection between the acts and/or omissions of Ebert and the injury allegedly sustained by the Plaintiff. Throughout the Contract, which Plaintiff signed, it is agreed that Plaintiff would assume the terms of the Lease and that Plaintiff reviewed and understood the Lease, among other documents impacting the Premises' use:

> Seller agrees to sell to Purchaser, and Purchaser agrees to purchase from Seller, the Seller's Shares, **_Lease_**, Personalty and any Included Interests and all other items included in this sale, for the Purchase Price and upon the terms and conditions set forth in this Contract.
>
> (Contract ¶2.1) (emphasis added).

Pursuant to the Contract, the Sellers warranted that:

> The Lease is, and will at Closing be, in full force and effect and no notice of default under the Lease is now or will at Closing be in effect.
>
> (Contract ¶4.1.3)

According to paragraph 5, the Plaintiff purchaser acknowledged review of the Lease, among other things, and assumed the risk of not having examined the Lease:

> [Plaintiff] has examined and is satisfied with, or (except as to any matter represented in this Contract by Seller) accepts and assumes the risks of not having examined, the Lease, the Corporation's Certificate of Incorporation, By-laws House Rules, minutes of the shareholder's and director's meetings, most recent audited financial statement and most recent statement of tax deductions available to the Corporations shareholders.
>
> (Contract ¶5) (emphasis added)

According to the Second Rider to the Contract, the Sellers were obligated to promptly inform the purchaser Plaintiff of, *inter alia*, "any proposed amendment or modifications of the Lease, the Certificate of Incorporation, or the Corporation's By-Laws (Second Rider ¶R5).

9

20. The Lease referenced in the Contract is the "Proprietary Lease" between the Luskers and the Board and states in relevant part:

> Under the current zoning laws, the Apartment Unit (excluding the North Gallery which is NYC Zoning Resolution-compliant retail gallery) may be used residentially only as joint living-work quarters for artists, and each unit must be occupied by an [sic] person certified as an artist by the New York City Department of Cultural Affairs or by a residential tenant determined by the New York City Loft Board to have occupied such unit as a "grandfathered tenant." ... the Lessee may use the Apartment Unit for other purposes provided that (i) the Lessee is solely responsible for all the costs and expenses in converting the Apartment Unit's use under the then applicable zoning and other laws or regulations which may pertain to the Apartment Unit; (ii) that the converted use is legal and permissible under such laws or regulations and (iii) does not violate such guidelines as may be imposed by the Board.

(Lease, ¶ 14(c)).

As stated above, the Lease, referenced within the Contract unequivocally states that the Premises were restricted to certain residential use unless Plaintiff wished to incur the cost associated with converting the space to other uses. (Lease ¶14). There is no allegation that Ebert advised Plaintiff that these restrictions were not enforceable. There are no facts pled in Plaintiff's Complaint that demonstrate Ebert informed Plaintiff that he was not subject to the provisions of the Lease and the Contract. Further there is no allegation that Ebert provided Plaintiff with erroneous advice about the Contract and its contents. Without such facts pled, and in the absence of these allegations, there can be no causal nexus between the Plaintiff's purported damages and the acts of Ebert.

### B. As A Matter of Law, Ebert Is Not Liable For Plaintiff's Dissatisfaction With The Contract To Which He Assented

New York courts have consistently held that a party is "responsible for his signature and is bound to read and know what he signed, <u>Tatar and Oneal v. Gold Inc., et. al.</u>, 2002 U.S.Dist. LEXIS 16588 (S.D.N.Y. 2002); <u>Beattie v. Brown & Wood</u>, 243 AD2d 395 (1st Dept. 1997). In

10

Beattie, the plaintiffs' commenced suit against the defendant law firm for their alleged failure to advise the plaintiffs of the terms of a settlement agreement entered into in an earlier action. Plaintiffs maintained that their attorneys did not advise them that, by executing the settlement agreement, plaintiffs were thereby withdrawing a counterclaim in that action with prejudice. The Appellate Division, First Department held that "since plaintiff was competent to execute the settlement agreement, and no fraud is alleged, he is responsible for his signature and is bound to read and know what he signed". Id. citing Pimpinello v. Swift & Co., 253 N.Y. 159, 170 N.E. 530 (1930).

Additionally, the plaintiff in Schwarz v. Shapiro, 202 A.D.2d 187, 608 N.Y.S.2d 210 (1st Dep't 1994), commenced a legal malpractice action against his former attorney who drafted a letter agreement. In affirming dismissal, the Appellate Division held that because in a prior action the client had been determined to have understood the contract and accepted the benefits of the agreement, he was therefore "precluded from asserting claims in the nature of malpractice against the attorney who drafted those agreements." Id.. It is submitted that this Court should find that Plaintiff enjoyed the benefit of the Contract and that Plaintiff is precluded from blaming Ebert for his dissatisfaction with the outcome of the transaction. The Contract gave Plaintiff the benefit of having an opportunity to purchase a $14 million property for only $250,000 (a 1.8% down payment) while he attempted to obtain the additional financing between March 27, 2007 and August 1, 2007. Plaintiff here was competent to enter into the Contract (and the evidence would show Plaintiff is a sophisticated real estate investor) and he should be able to force Ebert to bear the risk he accepted in trying to purchase a $14 million property. Beattie, Schwarz supra.

Similarly, in Lunney & Crocco v. Wolfe, 243 A.D.2d 348, 663 N.Y.S.2d 164 (1st Dept. 1997), plaintiff in a legal malpractice action asserted that his attorney failed to detect

unauthorized changes to a settlement agreement. The Court unanimously held that the attorney could not be liable where the agreement specifically stated that the plaintiff had been apprised of his legal rights and the agreement was fully and satisfactorily explained to him. Id. Like the plaintiff in Lunney, in executing the Contract, Stokes acknowledged his review of, *inter alia*, the Lease and Board by-laws:

> [Plaintiff] has examined and is satisfied with, or (except as to any matter represented in this Contract by Seller) accepts and assumes the risks of not having examined, the Lease, the Corporation's Certificate of Incorporation, By-laws House Rules, minutes of the shareholder's and director's meetings, most recent audited financial statement and most recent statement of tax deductions available to the Corporations shareholders.
>
> (Contract ¶5)

See also, Faden v. Satterlee Stephens Burke & Burke, 2008 NY Slip Op 5651, 858 N.Y.S.2d 914 (2d Dept. 2008) (holding that the agreement signed by the plaintiff conclusively disposed of his legal malpractice claim); Kaliman, LLC v. Berger, Gorin & Leuzzi, 307 A.D.2d 813, 763 N.Y.S.2d 52 (1st Dept. 2003), (holding that attorneys' alleged failure to perform due diligence, in connection with the purchase of a certain commercial building, even if proven, was not the basis for malpractice liability).

Hence, as a matter of law, the complaint's allegation that Ebert failed to read documents that would have enlightened Plaintiff to not enter into the Contract (Compl. ¶33) is without merit. There are no allegations or inferences in Plaintiff's Complaint that Plaintiff did not read the Contract, or that Ebert in any manner coerced or fraudulently induced Plaintiff to execute the Contract of Sale. Plaintiff does not and cannot maintain that he was not competent to execute the Contract or that Ebert in any manner induced him to execute the terms thereof. If the Contract of

12

Sale did not contain the provisions that Plaintiff wished to have included therein, Plaintiff should not have signed the agreement.

## II. Plaintiff's Claims Fail To Demonstrate His Purported Damages Were The Proximate Cause Of A Breached Duty Owed By Ebert

Further, Plaintiff's allegation that Ebert "failed to provide in Plaintiff's contract that Plaintiff would be free to rent to a commercial tenant" (Compl. ¶34) is also meritless. To establish legal malpractice in New York, the Plaintiff must show that the attorney's negligence was the proximate cause of injury to the client, and that absent such negligence, the client would have been successful in the underlying action." Sloane v. Reich, 1994 U.S. Dist. LEXIS 2851 (S.D.N.Y. 1994); C&F Pollution Control v. Fidelity & Cas. Co., 222 A.D.2d 828 (3d Dept. 1995).

Here, had the Contract provided that Plaintiff could lease the Premises to a commercial tenant would have been inconsequential. Generally, a contract of sale will not survive the closing unless the parties manifest the intent for the contract to endure thereafter. (See generally, Geller v. Fairmont Estates, 172 A.D.2d 915 (3d Dept. 1991); see also Benderson Development Company, Inc. v. United States Postal Service, 1996 U.S.Dist. LEXIS 16919). The Contract here plainly states that it would not survive closing: "[n]o representation and/or covenant contained herein shall survive Closing except as expressly provided." (Contract, ¶20).

Even if the Contract provided for the renting of the Premises to a commercial tenant, as a matter of law, such a provision would not have altered the outcome of the underlying transaction. All New York City real estate is governed by and subject to the New York City Zoning Resolution (New York City Zoning Resolution, Long Title, Section 11-01; Contract ¶14(c)). No wording within the Contract would have vitiated plaintiff's obligation to comply with municipal zoning laws which are in force by virtue of statute not private

13

3273183.1

contracts. See generally, Nina Penina Inc. v. Njoku, 2005 N.Y. Misc LEXIS 3308 (Sup. Ct. New York Cty., 2005) (holding that the ability to cure a change in zoning is within the control of the City of New York who was not a party to, nor bound by, the Contract). Converting the residential portion of the property to commercial use could only be accomplished by approval of the authorities overseeing New York City zoning - not by including a provision in a private contract of sale which would not survive closing.

In addition, while the complaint does not allege that the Board or the Luskers would have agreed to such a provision, it is pure speculation to allege that had Ebert included a provision in the Contract allowing plaintiff to lease the Premises to a commercial tenant that the Luskers and/or the Board would have agreed to it. It would be further conjecture to allege (which Plaintiff has not done) that Plaintiff could have *obtained* a commercial tenant.

Plaintiff therefore cannot establish he would have been successful but for the acts or omissions of Ebert, has failed to establish proximate causation, and his Complaint must be dismissed as a matter of law. Tortura, supra, (affirming the dismissal of a legal malpractice complaint which "fail[ed] to plead specific factual allegations demonstrating but for causation).

There is no allegation to suggest Ebert were hired to assist Plaintiff in the selection of the property to be purchased or the process of converting its use from residential to commercial. There is no allegation that Ebert represented that the Premises could be leased to a commercial tenant (Plaintiff alleges that Malley stated that Premises would be perfect for a commercial retailer (Compl. ¶17)). Plaintiff should not be permitted to shift the risk of this transaction onto Ebert or the other defendants. In executing the Contract, Plaintiff represented that he understood and appreciated all of the agreements, rules and statutes which impacted the Premises' use. He cannot now say Ebert did not enlighten him. Nor can he say that Ebert's failure to include a

14

3273183.1

provision in the Contract proximately caused the loss. Any loss was a consequence of the inherent risk associated with the transaction Plaintiff attempted to make.

## CONCLUSION

For the reasons stated above it is respectfully requested that this Court issue an Order dismissing the Plaintiff's Complaint against Ebert & Associates and Steven Ebert, Esq., pursuant to Federal Rule of Civil Procedure 12(b)(6) or alternatively pursuant to Rule 56.

Dated:    New York, New York
          July 10, 2008

                                        Yours etc.,
                    WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

                    By:   /s/ Lauren J. Rocklin
                          Thomas W. Hyland (TH-3559)
                          Lauren J. Rocklin (LR 7370)
                          Attorneys for Defendants
                          Ebert & Associates and Steven Ebert, Esq.
                          150 East 42nd Street
                          New York, New York 10017-5639
                          (212) 490-3000
                          thomas.hyland@wilsonelser.com
                          lauren.rocklin@wilsonelser.com
                          File No. 07765.00101