UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————

CHRISTIAN STOKES                               08 CIV 3667
                                               (CM)(DFE)
                    Plaintiff,

        vs.

RONALD LUSKER, MARILYN LUSKER,
EBERT & ASSOCIATES, STEVEN EBERT,
ESQ., ANDREWS BUILDING CORP.,
MALLEY GROUP, ERIC MALLEY, and
85-87 MERCER STREET ASSOCIATES,
INC.,

                    Defendants.
————————————————————

---

**MEMORANDUM OF LAW
IN OPPOSITION TO MOTION TO DISMISS OF
DEFENDANTS, RONALD LUSKER, MARILYN LUSKER,
EBERT & ASSOCIATES, STEVEN EBERT, ESQ. ERIC MALLEY
AND MALLEY GROUP**

---

By:    Joseph H. Neiman, Esq.
       179-36 80th Road
       Jamaica Estate, NY 11432
       (201) 487-0061
       *Attorney for Plaintiff*

Table of Authorities

Page

Banc of America Securities LLC v. Solow Building Co. II, LLC,
47 A.D. 3d 239, 847 N.Y.S. 2d 49 (App. Div. 1st department 2007) ……………  3, 4

Beattie v. Brown & Wood, 243 AD2d 395 (1st Dept. 1997) ……………………  7, 9

Kalisch-Jarcho, Inc. v. The City of NY,
(Court of Appeals 1983), 58 N.Y. 2d 377, 448 N.E. 2d 413 ……………………  3, 5

Lunney & Crocco v. Wolfe, 243 A.D.2d 348, 663 N.Y.S.2d 164 (1st Dept. 1997)  8, 9

Medelson v. Carlo, Spam, Book, Caster & Cafile, 259 A.D. 2nd 282 ……………  8

Murphy v. American Home Products Corp.,
58 N.Y. 2d 293, 304, 461 N.Y.S. 2d 232 (1983) …………………………………  3

Schwarz v. Shapiro, 202 A.D.2d 187, 608 N.Y.S.2d 210 (1st Dep't 1994) ………  9

Joseph H. Neiman, Esq.
179-36 80th Road
Jamaica Estate, NY 11432
Tel: (201) 487-0061
*Attorney for Plaintiff, Christian Stokes*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

CHRISTIAN STOKES                                    08 CIV 3667
                                                    (CM)(DFE)
                    Plaintiff,

        vs.

RONALD LUSKER, MARILYN LUSKER,
EBERT & ASSOCIATES, STEVEN EBERT,
ESQ., ANDREWS BUILDING CORP.,
MALLEY GROUP, ERIC MALLEY, and
85-87 MERCER STREET ASSOCIATES,
INC.,

                    Defendants.
_____


MEMORANDUM OF LAW
IN OPPOSITION TO MOTIONS TO DISMISS OF
DEFENDANTS, RONALD LUSKER, MARILYN LUSKER, EBERT & ASSOCIATES,
STEVEN EBERT, ESQ. ERIC MALLEY AND MALLEY GROUP

        In Defendants, Eric Malley and Malley Group (collectively, "Malley")

Memorandum of Law, defendants rely heavily upon the fact that Malley was selling

agent of the defendant and thus was engaged in arm length transaction with plaintiff

(buyer).  Malley's memorandum states "as the agent for the Sellers', Malley did not have

a fiduciary duty to Stokes or any obligation to advise Stokes that he had a significant task

ahead to get the additional portion of the premises rezoned to allow for retail use".

Malley's premise that Malley owed no duty to Stokes is simply false and belies both his

own Affidavit and the affidavit of Christian Stokes. Malley was Stokes' broker, selling

his apartment prior to the subject deal and also agreed, as per the Affidavit of Christian

Stokes to be the broker that was going to rent out the premises that Stokes was going to

purchase to commercial tenants. By advising Stokes that he in fact would undertake to

list the space for commercial tenants to rent and by his prior current engagement, he was

clearly acting or pretended to act as Stokes fiduciary. He was clearly much more than an

arms length broker representing only the seller.[1] He created this fiduciary duty both by

being his broker to sell his apartment and by agreeing to list the new space. But for his

actions, Stokes would not have been involved in the deal as set forth. What Malley

attempts to rely upon is the fact that hidden in a co-op offering "book" was the essential

information that Malley either knew or should have known, would have effected Stokes'

involvement in this deal from day one.   It is one thing to put the direct information in a

contract as Stokes signed, but quite another to leave it hidden among hundreds of other

pages plaintiff or plaintiff's representative purportedly read.  Plaintiff readily admits

signing the agreement and that he failed to adequately review both the proprietary Lease

and the Co-operative Offering Plan[2].

     In essence, it is alleged that all of the parties knew and may have acted in concert[3]

(this can only be determined upon adequate discovery) to wrongfully obtain plaintiff's

$250,000.00.  No doubt exists that much of the blame herein lies with plaintiff's attorney

---

[1] In fact, he should have alerted Stokes of potential conflicts.

[2] There is no doubt that plaintiff's attorney has blame regarding plaintiff's situation, however, that should not exonerate the improprieties of a broker, a co-op board and a seller who, as set forth in the complaint, went about, through a nefarious scheme to do nothing more than pilfer $250,000.00 from plaintiff by hoping that plaintiff would not realize that plaintiff, in fact, could not do with the premises that which plaintiff was seeking.

[3] All of the parties except Ebert, who should have known.

in his total failure to adequately represent the plaintiff.  However, the other defendants are not without blame here either.

Though as a general rule, one is bound by that which he signs in a contract, as the Court of Appeals has noted there are several reasons why the court should not dismiss this matter at this juncture.  For example, though generally, exculpatory clauses are enforceable, when in contravention of acceptable notions of morality, when the misconduct for which it would grant immunity smacks of intentional wrongdoing. Courts are loath to offer such protection.  This can be explicit, as when it is fraudulent, malicious or prompted by the sinister intention of one acting in bad faith. Or, when as in gross negligence, it betokens a reckless indifference to the rights of others, it may be implicit.  See Kalisch-Jarcho, Inc. v. City of New York, (Court of Appeals 1983) 58 N.Y. 2d 377, 448 N.E. 2d 413.  In discussing applicable issues as presented herein, the Appellate Division in Banc of America Securities LLC v. Solow Building Co. II, LLC, 47 A.D. 3d 239, 847 N.Y.S. 2d 49 (App. Div. 1st department 2007).  The Court stated at 243 "In addition, it is unnecessary for a party to a contract dispute to raise the issue of good faith.  The duty of good faith and fair dealing is implicit in the performance of contractual obligations. …an obligation of good faith and fair dealing is appropriately implied and if implied, will be enforced.  Citing Murphy v. American Home Products Corp., 58 N.Y. 2d 293, 304, 461 N.Y.S. 2d 232 (1983).  The Court recognized the common business practice of limiting liability by restricting or barring recovery by means of an exculpatory provision.  However, that policy does not extend to acts that are either willful or grossly negligent.  Enforcement of such a provision is precluded when the misconduct for which it would grant immunity smacks of intentional wrongdoing".

3

Citing <u>Kalisch-Jarcho</u>.  As when it is fraudulent, malicious or prompted by the sinister intention of one acting in bad faith.  Or, when as in gross negligence, it betokens reckless indifference to the rights of others.  Again citing <u>Kalisch-Jarcho.</u>

  Finally, the court in <u>Banc of America</u> held at 245 "thus, the complaint, as supplemented by this Affidavit, establishes, *prima facie*, that Solos bad faith, misconduct in deliberately withholding approval of proposed alterations…"  The nefarious actions as alleged herein by the sellers, the Luskers, the co-op board and Malley should not get a free pass simply because the contract itself sets forth other documents which had purchaser been aware of would have caused plaintiff not to be involved in this deal.  The general contract rule that one is responsible for what he signs should not allow the defendants the ability to hatch a sinister plot when there is evidence they not only knew what plaintiff intended for the property could not be accomplished, but encouraged plaintiff's misguidance and relied on the fact that often co-op purchases are accomplished without the purchaser perusing all of the subject co-op documents.

  The 12 B 6 motion of the various defendants, asks this court to proclaim, (even though defendants engaged in either intentional misrepresentations or grossly negligent conduct), plaintiff cannot seek redress of these defendants because they are shielded by the fact that documents merely referenced by the contract should have put the plaintiff on notice.  The court at this stage should not be in a position to condone such action.

  Set forth in defendant, Ebert's memorandum of law and is axiomatic as far as legal malpractice actions are concerned, is that the plaintiff must demonstrate proof that (1) the attorney was negligent.  Here, the negligence alleged is among other things that defendant Ebert failed to read the offering plan and proprietary lease and furthermore

4

failed to advise plaintiff that by entering into the contract he was acknowledging that in fact, premises which he (plaintiff) sought to rent out commercially could not in fact be rented out commercially.  He also  failed to advise the plaintiff that by signing the contract, he would be acknowledging that he was aware that the premises could not be rented out commercially.  This is opposite to what  plaintiff in fact told his attorney, which his attorney knew was plaintiff's plan for the premises.  It is alleged that defendant, Ebert was also negligent in not providing plaintiff with such documents and in not making sure plaintiff was aware what was in such documents.

The Second requirement is that the negligence was the proximate cause of the loss sustained.  Here, the loss sustained was the $250,000.00 deposit.  Plaintiff never would have made such a deposit had Ebert properly advised him. The all important but for test, which is cited in Ebert's memorandum of law that but for defendant, Ebert's failure to have read the proprietary lease and other co-op documents or Ebert's failure to advise plaintiff to read same, or making sure plaintiff was aware of the contents of such documents prior to plaintiff executing the contract and Ebert's failure to advise plaintiff of the ramifications of executing the contract vis a vie that which was provided in the offering plan and proprietary lease (which would have alerted plaintiff that he would be in fact, at least prior to changing the zoning laws as well as the proprietary lease, would be unable to lease the premises out to a commercial tenant) but for that, plaintiff would not have entered into the agreement and lost $250,000.00.  The third requirement is that the plaintiff sustained actual damages as a result of the attorney's negligence.  As set forth in the second requirement, this is more than evident.  Plaintiff never would have entered into this contract and would not have lost the $250,000.00 he has in fact lost.

5

Defendant Ebert attempts to rely upon the fact that plaintiff had signed this

contract which states in part

> "[Plaintiff] has examined and is satisfied with, or (except as to
> any matter represented in this Contract by Seller) accepts and
> assumes the risks of not having examined, the Lease, the
> Corporation's Certificate of Incorporation, By-laws, House Rules,
> minutes and the shareholder's and director's meetings, most recent
> audited financial statement and most recent statement of tax
> deductions available to the Corporations shareholders."

It is Hornbook law that when it says buyer, that can mean buyer's representative,

meaning defendant Ebert himself.  Presumably, when plaintiff signs these documents, he

did so under the advice of counsel and certainly believed that his attorney had read and

was familiar with any pertinent documents (especially ones Ebert had in his possession

and knew plaintiff did not have) and knew their contents.  For defendant Ebert to come in

and say that because you signed an agreement which I, as attorney allowed you to sign

and in fact recommended you to sign you are therefore responsible for all of the terms of

the contract and even if there are terms in there which I should have explained to you or

should have realized were to your detriment because of my role as your attorney, you

waive any claims against me by the mere fact that you executed the agreement.  Such a

proposition is absolutely ridiculous and belies the practicality of the responsibility of an

attorney when dealing with significant contracts on behalf of their clients.  The client

defers to an attorney when he has contracts that his attorney is being paid to review,

analyze and offer advice on.  To suggest, as alleged in the Complaint, this attorney knew

that the intentions of the plaintiff were to rent the subject premises out to commercial

tenants and the Lease and other co-op documents which the attorney was charged with

the obligation to review provided ample notice that such use would not be permitted, and

6

thus was the antithesis of what defendant Ebert knew was plaintiff's objective, and absolutely failed to advise plaintiff of such issues and given all that defendant, Ebert is immune from liability simply because plaintiff executed the agreement goes beyond mind boggling.

In Ebert's argument, defendant Ebert attempts to state that since there is no allegation that Ebert advised plaintiff that these restrictions were not enforceable, and thus no liability, it is clear from the reading of the complaint that defendant never advised plaintiff that these restrictions existed, let alone whether or not they were enforceable. It is one thing when a party to a contract of numerous pages (when one includes the proprietary lease and offering plan that was in fact eluded to in the contract) misses something within that contract or does not pick up on something in that contract, that can be expected when lay people review contracts. However, when that which is missed is clearly the attorney's obligation and what in fact he was hired to do, namely, seek out and find such issues and advise on same, it is exactly what gave rise to such cause of action. Defendant, Ebert attempts to use <u>Beattie v. Brown & Wood</u>, 243 AD2d 395 (1st Dept. 1997) which involves a settlement agreement which is what the plaintiff in that matter specifically signed. In <u>Beattie</u>, there was no reference of other documents which only the attorney had in his possession. In that agreement (Beattie) that which was signed contained that which was the crux of the matter. It specifically set forth that the subject counterclaim was being withdrawn with prejudice. Here, defendant relies upon the language that says "Plaintiff has examined and is satisfied with, or <u>except as to any representative in this contract by seller) accepts and assumes the risk of not having examined, the Lease, the corporation's certificate of incorporation, bylaws, house rules.</u>"

7

Clearly, plaintiff's attorney was vested with the obligation to have reviewed and advised on same. Even if plaintiff arguendo reviewed those documents, the fact that plaintiff may have missed something or misunderstood something does not alleviate that which was the attorney's obligation. To compare that obligation of one reviewing numerous pages and exhibits to a contract to a party signing a settlement agreement which in black and white says "dismissing all counterclaims" and now coming forward and saying you didn't understand what that meant is quite another matter.

The Court is respectfully referred to Medelson v. Carlo, Spam, Book, Caster & Cafile, 259 A.D. 2d 282, for the elements necessary for plaintiff's cause of action to exist.

Defendant Ebert attempts to claim that the facts herein are similar to that of Lunney & Crocco v. Wolfe, 243 A.D.2d 348, 663 N.Y.S.2d 164 (1st Dept. 1997), wherein the plaintiff claimed that defendant failed to detect unauthorized changes to the settlement agreement and that neither he, nor the petitioner read the final draft of the agreement before its execution and are foreclosed by the agreement which states "that respondent has been apprised of his legal rights and had ascertained and weighed all the facts likely to influence his judgment and that all provisions of the agreement were fully and satisfactory explained to him." That is quite different from the matter herein relying on his counsel to review all of the documents and where the document states that plaintiff has examined and is satisfied with….or accepts and assumes that risk of not having examined the Lease…is simply not the equivalent. If such were the same, then any time an attorney did any kind of contract review and any kind of advisement on a Contract, no attorney could be liable for negligence or attorney malpractice for failure to advise of ramifications within a reviewed agreement if in fact the agreement was signed by his

8

client.  Of note in both <u>Beattie</u> and <u>Lunney</u>, is that both involved plaintiff's settlements and the strong policy to encourage settlements and keep them final.  Here, defendant Ebert's job was to review and advise on that which he either did not do or miserably overlooked.

Defendant Ebert states in its memorandum that there is no allegation that Ebert provided plaintiff with erroneous advise about the contract in its contents.  Such statement is simply false.  Plaintiff's claim that Ebert failed to advise plaintiff that plaintiff could not do that which Ebert knew plaintiff was intending to do amounted to such failure.  Defendant Ebert also cites <u>Schwarz v. Shapiro</u>, 202 A.D.2d 187, 608 N.Y.S.2d 210 (1st Dep't 1994).  In that matter, the client was held to have understood the contract and accepted the benefits of the agreement.  The key is that case was the doctrine of collateral estoppel because it had been established that the plaintiff understood the contract and accepted the terms and benefits of it in a prior action.  Here, there has been no such finding.  In fact, the claim is just the opposite.  It is alleged that plaintiff did not understand the terms of the contract and defendant failed to explain such terms, failed to advise on such terms, failed to even understand the terms himself because of his lack of diligence in reading the agreement.  The matter against defendant Ebert is relatively simple.  Ebert knew from plaintiff that plaintiff intended to purchase the subject property and lease same out to a commercial tenant.  Ebert failed to review all of the documents or if in fact he did review the documents, failed to realize that the documents themselves indicated that plaintiff would not be able to rent out the subject premises to a commercial tenant and thus the deal would be dead from its conception.  Plaintiff was bound to lose his $250,000.00 since he would be unable to financially complete such deal.  Defendant

9

Ebert was aware of this, yet failed to advise plaintiff the ramifications of executing the contract and of its terms. To say that because plaintiff in fact executed the contract somehow relieves Ebert of any liability pertaining to the contract is a circular argument which is absolutely senseless.

The Court is also respectfully referred to Ebert's actions in letting plaintiff hire him to obtain his deposit back and failing to advise plaintiff that there may be a potential conflict with his representation.

In sum, what went on here is that in order to obtain $250,000.00 from the plaintiff, the defendants, Lusker and Andrews Building Corp. and 85-87 Mercer Street Associates Inc., as well as Eric Malley, either schemed in concert or by themselves acted with malice or reckless regard to plaintiff's rights in obtaining plaintiff's $250,000.00 by lying, deceit and chicanery and through the negligence of Ebert was allowed to perpetrate a scheme that had one design, the acquisition of plaintiff's $250,000.00. To allow the defendants to walk away simply because plaintiff was duped into signing without so much as the benefit of discovery belies justice. There was a total lack of good faith and fair dealing and utter failure by plaintiff's counsel.

10

## CONCLUSION

       For the reasons set forth herein, plaintiff requests to court incorporate plaintiff's Affirmation to its complaint or allow plaintiff leave to amend such complaint incorporating its affirmation and denying defendants' motions and for such other further relief as the court deems just and proper.

Dated: July 21, 2008
      Jamaica Estate, NY

                   S/Joseph H. Neiman_____
                   JOSEPH H. NEIMAN, Esq.
                   Attorney for Plaintiff
                   179-36 80th Road
                   Jamaica Estate, NY 11432
                   (201) 487-0061

To:    David C. Wrobel, Esq.
       Wrobel & Schatz LLP
       *Attorney for Defendants,*
       *Malley Group and Eric Malley*
       1040 Avenue of Americas
       11th Floor
       New York, NY  10018
       Tel: 212-421-8100

       Barry M. Karson, Esq
       Karson & Long, LLP
       *Attorney for Defendants,*
       *Ronald Lusker and Marilyn Lusker*
       600 Third Avenue, 15th Floor
       New York, NY  10016
       (212) 490-8026  ext. 141

       Lauren Rockland, Esq.
       Wilson Elser
       *Attorney for Defendants*
       *Ebert & Associates and Steven Ebert*
       150 E 42nd Street
       New York, NY  10017-5612
       (212) 490-3000  ext. 2146