UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
CHRISTIAN STOKES,                                     :
                                                      :           08 Civ. 3667 (CM) (DFE)
                      Plaintiff,          :
                                                      :
  - against -                                         :
                                                      :
RONALD LUSKER, MARILYN KOCHER LUSKER,                 :
EBERT & ASSOCIATES, STEVEN EBERT, ESQ.,               :
ANDREWS BUILDING CORP., MALLEY GROUP,                 :
ERIC MALLEY, 85-87 MERCER STREET                      :
ASSOCIATES, INC.,                                     :
                                                      :
                      Defendants.         :
------------------------------------------------------------------ x

**REPLY MEMORANDUM OF LAW OF DEFENDANTS
RONALD LUSKER AND MARILYN KOCHER LUSKER
IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....................................................................................2

FACTS ALLEGED IN THE WHOLLY DEFICIENT AFFIRMATION ......................................3

ARGUMENT ..............................................................................................................5

POINT 1 - STOKES'S ADDITIONAL CONTENTIONS OF FRAUD AND CONSPIRACY ARE INSUFFICIENT TO PRESERVE HIS CLAIMS AGAINST THE LUSKERS DUE TO THE CONTRACT TERMS AND THE LAW ........................................................................ 5

A. Even if the Court Accepts The Deficient SA in Which Stokes Belatedly Charges the Luskers With Fraudulent Statements, As Opposed to Omissions, Under the Contract, Stokes Could Not Justifiably Rely On the Luskers' Statements. .........................................................................5

B. In The Same Manner Stokes's Claims Of Fraud and Conspiracy Against The Luskers Concerning Not Being Informed of The Leasing Restriction Were Insufficient Under Rule 9, Stokes's Claims Surrounding The Board's Unconditional Approval of Stokes Are Equally Insufficient. ....................7

CONCLUSION ..........................................................................................................10

## TABLE OF AUTHORITIES

**CASES**                                                                                           Page

Banque Arabe et Internationale D'Investissement v. Md. Nat'l. Bank,
  57 F.3d 146, 156 (2d Cir. 1995).................................................................................. 6, 7

Feick v. Fleener, 653 F.2d 69, 75 & n.4 (2d Cir. 1981)....................................................... 3

Lipin v. Hunt, 538 F.Supp. 2d 590, 598-599 (S.D.N.Y. 2008)....................................... 3, 10

NYSE Specialists Sec. Litig., 503 F.3d 89 (2d Cir. 2007) .................................................. 3

United Artists Theater Circuit, Inc. v. Sun Plaza Enterprise Corp.,
  352 F.Supp.2d 342 (E.D.N.Y. 2005) ............................................................................. 5

**RULES**

Federal Rules of Civil Procedure 8 ..................................................................................... 7

Federal Rules of Civil Procedure Rule 12(b)(6) ............................................................... 1, 7

Federal Rules of Civil Procedure Rule 9 ............................................................................. 1

Pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b), defendants Ronald Lusker and Marilyn Kocher Lusker (together, the "Luskers") have moved to dismiss plaintiff Christian Stokes's ("Stokes") complaint as to them. In support of their motion, the Luskers filed their notice of motion and memorandum of law in support (the "Moving Memo"), both dated June 19, 2008, and the accompanying affidavit of Barry M. Karson, Esq., sworn June 19, 2008 (the "KA"). The Contract of Sale – Cooperative Apartment, dated March 30, 2007 (the "Contract"), on which Contract the captioned case is based, was attached as Exhibit 2 to the KA.

In opposition, Stokes filed a memorandum of law (the "Opposing Memo."), the affirmation of Christian Stokes (the "SA"), with exhibits, and an addendum to memorandum of law dated July 22, 2008 (the "Late Adden."). The SA does not comply with 28 U.S.C. §1746 since Stokes does not declare that the information contained in it is "true and correct" and the SA does not reflect where it was executed.

Similarly, by Stokes's failure to state that he executed the affirmation in the United States, pursuant to 28 U.S.C. §1746(1) he was required to say that he executed the affirmation "under the laws of the United States of America," which he did not. Thus, the Court should disregard the SA and dismiss the lawsuit since the affirmation does not comply with 28 U.S.C. §1746 and violates the Court's July 17, 2008 order. On July 17, the court ordered Stokes to submit an "<u>affidavit</u> explaining who he his, e.g. country of citizenship, domicile, etc." [Emphasis added.]

Further, pursuant to the Court's endorsed order dated June 30, 2008, Stokes's answering papers on the motion were to be filed on or before July 21, 2008. Therefore, the Late Adden. was filed in violation of the Endorsed Order and should, like the SA, be disregarded by the Court. Without prejudice to their position as stated above, the Luskers respectfully submit this

1

reply memorandum of law in further support of their motion should the Court decides to accept the SA as complying with its endorsed order.

## PRELIMINARY STATEMENT

In Point 2 of the Moving Memo, pp. 8-14, the Luskers demonstrated that Stokes had not stated a claim against the Luskers for fraud, fraudulent inducement or conspiracy because he could not reasonably rely on his contention that the Luskers <u>omitted</u> to tell him of a purported restriction in the by-laws of defendants 85-87 Mercer Street Associates, Inc. ("MSA"). Moreover, any restriction affecting the right to lease the Luskers cooperative unit at 85-87 Mercer Street (the "Unit") to a commercial tenant was covered in paragraph 5 of the Contract, and the Luskers had no duty to tell Stokes about any purported leasing restriction. Moving Memo, p. 11.

In response to the Moving Memo, Stokes now contends that the Luskers affirmatively represented to him that he could use their entire Unit as a "flag ship store" and that they repeatedly told him he could rent to a commercial retailer. SA, ¶5. Stokes fails to explain why his allegations of fraud by <u>omission</u> have suddenly changed to allegations of fraud by <u>commission</u>. Nevertheless, not only does paragraph 5 of the Contract continue to defeat his claim, but as reflected in Point 1A, pp. 5-7, of this Memorandum, so do paragraphs 14 and 35, the merger clauses.

In Point 2C of the Moving Memo, pp. 12-14, the Luskers showed the Court that Stokes had not stated claims of fraud and conspiracy with sufficient particularity against the Luskers to comply with Fed.R.Civ.P. 9. The Luskers demonstrated that Stokes failed to specify the who, what, when and where of the alleged fraud and conspiracy among the Luskers and MSA and lumped defendants Ron Lusker ("Ron") and Marilyn Lusker ("Marilyn") together.

To attempt to comply with Rule 9, Stokes now broadens his fraudulent conspiracy claim and purports that the alleged conspiracy was among the Luskers, MSA and, "potentially," defendant real estate broker, Eric Malley ("Malley"). Lusker has expanded the conspiracy claim from not only entailing having Stokes sign the Contract but having him unconditionally approved by MSA's board of directors (the "Board"). Stokes's proof of this conspiracy is Stokes's alleged failure to submit a portion of an application to the Board. SA, ¶8.

As reflected in Point 1B of this Memorandum, pp.7-10, Stokes fails to explain to the Court why he did not speak of this wider conspiracy in his complaint; why he represented that he could afford the Unit without any proviso, when he could not; and, why he did not immediately upon receiving the application complain to the Luskers and the Board that he was fraudulently induced and demand the return of his initial deposit, rather than silently waiting to be approved by the Board. SA, ¶8.

## FACTS ALLEGED IN THE WHOLLY DEFICIENT AFFIRMATION

For the purposes of this motion only, the allegations of Stokes' complaint and, if accepted by the Court, the SA, must be taken as true, except for those allegations that are conclusory or which are contradicted by the Contract. NYSE Specialists Secs. Litig., 503 F.3d 89, 95 (2d Cir. 2007); Feick v. Fleener, 653 F.2d 69, 75 & n.4 (2d Cir. 1981); and Lipin v. Hunt, 538 F.Supp. 2d 590, 598-599 (S.D.N.Y. 2008). Stokes now claims that he had "several meeting with the Luskers" who told him that the premises would "make an ideal flag ship store," which was his intention and is "what Eric Malley told [him] could be done with the premises." SA, ¶5.

Stokes does not explain why this allegation has suddenly come to light when in the complaint he alleged the Luskers committed fraud through omission – not telling him about the leasing restriction. According to Stokes, the Luskers represented to him at least three times that the premises could be used for retailing despite what they knew what was in the cooperative's

3

documents – "the Luskers went along with their scheme to dupe [Stokes] out of a $250,000.00 deposit." SA, ¶6.

Stokes purports that he received an application several days after signing the Contract, at which time it was brought to his attention that the premises could not be rented to commercial tenants. SA, ¶7. As a result, Stokes claims that he "refused to sign that portion of the application," and that nonetheless the Board still approved his application. SA, ¶8. However, <u>Stokes does not explain why when he learned of the restriction he did not complain to the Luskers and the Board and demand the return of his initial deposit, but instead quietly waited to be unconditionally approved by the Board</u>.

According to Stokes, his approval by the Board, in the wake of his not signing a portion of application, and his finances, makes his approval highly suspect. Stokes believes "that the Board and the Luskers and possibly Eric Malley were all in the scheme." SA, ¶8. However, Stokes fails to address his unqualified representation in the Contract that he could afford the Unit. KA, Ex. 2, ¶31. Stokes's only explanation for his agreement to paragraph 5 of the Contract, and his not requiring in the Contract that he be permitted to rent the entire Unit to a commercial tenant, was that it was his lawyer's fault. SA, ¶¶11-12 and Opposing Memo, pp. 9-10.

4

# ARGUMENT

## POINT 1

### STOKES'S ADDITIONAL CONTENTIONS OF FRAUD AND CONSPIRACY ARE INSUFFICIENT TO PRESERVE HIS CLAIMS AGAINST THE LUSKERS DUE TO THE CONTRACT TERMS AND THE LAW

**A.     Even if the Court Accepts The Deficient SA in Which Stokes Belatedly Charges the Luskers With Fraudulent Statements, As Opposed to Omissions, Under the Contract, Stokes Could Not Justifiably Rely On the Luskers' Statements.**

The Luskers set forth the elements of common law fraud in Point 2A of the Moving Memo, p. 8. The most important missing element of fraud, which supports dismissal of Stokes's fraud claims against the Luskers, is reasonable reliance. United Artists Theatre Circuit, Inc. v. Sun Plaza Enterprise Corp., 352 F.Supp.2d 342, 351 (E.D.N.Y. 2005).

In the SA, Stokes abandoned his contention in the complaint that the Luskers had committed fraud by <u>omission</u>. SA, ¶6 and KA, Ex. 1, ¶22. Thus, Stokes now alleges that:

> 5.     I [Stokes] had several meetings with the Luskers, the sellers of the premises, who in fact told me that the premises would "make an ideal flag-ship store" which was my intention and is what Eric Malley told me could be done with the premises.
>
> 6.     During the meeting [in Paul Peragine's office], it was stated clearly that the premises were to be used as a rental for a retailer. This was at least the third time the Luskers represented to me that the premises could be used for said purpose despite that they knew and yes [sic] what was in the corporate documents.

SA, ¶¶5 and 6.

However, in the Contract, Stokes represented that he knew what was in the MSA's "Lease, the Corporation's [MSA's] Certificate of Incorporation, By-Laws, House Rules, minutes of shareholders and directors meetings" (together, the "Cooperative's Documents"), or assumed the risk of what was in them. Paragraph 5 of the Contract is titled, "Corporate Documents," and states:

5

> Purchaser has examined and is satisfied with, or (except as to any matter represented in this Contract by Seller) accepts and assumes the risk of not having examined, the Lease, the Corporation's [MSA's] Certificate of Incorporation, By-Laws, House Rules, minutes of shareholders and directors meetings ... [Emphasis added.]

KA, Ex. 2, ¶5.

In addition, Stokes agreed that he would only rely on the representations and understandings contained in the Contract. In that regard, Paragraph 14 of the Contract is titled, "Entire Agreement, Modification," and provides:

> All prior oral and written representations, understandings and agreements had between the Parties with respect to the subject matter of this Contract ... are merged in this Contract which alone fully and completely expresses the Parties ... agreement. [Emphasis added.]

KA, Ex. 2, ¶14.1.

Likewise, also contradicting Stokes claimed reliance on the Luskers newly created representations of his being able to lease the entire Unit for commercial purposes is paragraph 35B of the Contract, which states: Purchaser acknowledges having entered into this Contract without relying on any promises, statements, representations, warranties, conditions or other inducements, express or implied, oral or written, not set forth herein." KA, Ex. 2, ¶35 B.

Therefore, based on the terms of the Contract, Stokes clearly could not reasonably rely on the Luskers telling him whether he could lease the entire Unit to a commercial retailer. Stokes admits that under the Contract he assumed the risk of the contents of the Cooperative's Documents, and that the Contract reflects his agreement that he was only relying on what was in the Contract. SA, ¶6. As shown the Court in the Moving Memo, pp. 9-10, the Second Circuit has found that for a plaintiff to succeed on a claim of fraud, the plaintiff must "establish that it actually relied on the disclosure or lack thereof, and that such reliance was reasonable and justifiable." In Banque Arabe et Internationale D'Investissement v. Md. Nat'l. Bank, 57 F.3d 146, 156 (2d Cir. 1995).

Consistent with <u>Banque Arabe</u>, since Stokes was on notice of the Cooperative's Documents, yet proceeded with the transaction after reviewing those documents, or without reviewing them, he accepted their contents. <u>See, also, B. Lewis Productions, Inc. v. Angelou</u>, 2008 WL 1826486 *3 (April 22, 2008 S.D.N.Y.). Therefore, in accordance with <u>Banque Arabe</u> and <u>B. Lewis</u>, Stokes cannot establish the reasonable reliance element of fraud or fraudulent inducement. Thus, pursuant Fed.R.Civ.P. 12(b)(6) the first and second causes of action of the complaint must be dismissed as against the Luskers.

**B.    In The Same Manner Stokes's Claims Of Fraud and Conspiracy Against The Luskers Concerning Not Being Informed of The Leasing Restriction Were Insufficient Under Rule 9, Stokes's Claims Surrounding The Board's Unconditional Approval of Stokes Are Equally Insufficient.**

In Point 2C of the Moving Memo, pp. 12-14, the Luskers explained to the Court that under the Federal Rules a motion to dismiss generally requires that the Court to accept as true all well-pleaded material allegations of the complaint and draw all reasonable inferences in favor of the non-moving party. However, Fed.R.Civ.P.9(b) provides that:

> "[I]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

Thus, as reflected in Point 2C of the Moving Memo, pp. 8, Rule 9(b) is an exception to the generally liberal scope of pleadings allowed by Fed.R.Civ.P. 8, and in the Second Circuit, a plaintiff's allegations of fraud are deficient where they do not connect particular representations to individual defendants. Therefore, where multiple defendants are alleged to have committed fraud, the complaint must "allege specifically the fraud perpetrated by each defendant." <u>Campers World International, Inc. v. Perry Ellis International Inc.</u>, 2002 WL 1870243 at *3 (S.D.N.Y. August 13, 2002).

Under these standards, Point 2C of the Moving Memo clearly showed that the allegations in the first and second causes of action fall well short of the Rule 9(b) requirements for alleging

7

fraud against the Luskers. Stokes does not address Point 2C in the SA, the Opposing Memo or the Late Adden., nor does Stokes demonstrate that those allegations were sufficient. However, Stokes makes the following new, equally deficient allegations in his affidavit, without explaining why he did not include them in his complaint:

> 7. Annexed hereto as Exhibit B is an application which I should have been given at or prior to the signing of the contract. This application was not forwarded to me until several days after the signing of the Contract at which time it was brought to my attention that in fact, as set forth in the application, the premises could not be rented to commercial tenants.
>
> 8. As a result, I refused to sign that portion of the application. Nonetheless, the co-op board still approved my application. ... Clearly, a required document by the co-op board that is refused to be signed by the individual whose signature is necessary should have led to me not being approved. As alleged in my complaint, my approval by the co-op board in the wake of me not signing the subject document and my finances make my approval highly suspect. It is believed that the Board and the Luskers and possibly Eric Malley were all in the scheme.

Stokes Affid., ¶¶7 and 8.

In the first cause of action of the complaint, Stokes contended that the Board approved Stokes as a purchaser even though it knew he could not "financially undertake the transaction." KA, Ex. 1, ¶¶23 and 28. There was no mention in the complaint of an "application" or what benefit MSA would derive from this purported conspiracy. Again, based on paragraph 5 of the Contract, Stokes was on notice of the leasing restriction which he claimed in the complaint was in MSA's by-laws and was charged with notice of this information without waiting for any other document. KA, Ex. 1, ¶21.

Accepting Stokes's contention about the application as true does not overcome paragraph 5 of the Contract. Nevertheless, Stokes still admits not taking any action once he was aware of the restriction (like telling the Luskers and the Board he was defrauded and demanding a return

8

of his initial deposit) but instead stayed silent and permitted the Board to unconditionally approve him.

In the complaint, Stokes conclusorily alleged that defendants Ron Lusker ("Ron") and Marilyn Lusker ("Marilyn") "knew at all times" that he wanted to rent the Unit to a commercial retailer, and "did not advise him," but "conspired" with MSA to keep his initial deposit of $250,000.00 (the "Initial Deposit"). KA, Ex. 1, ¶22. Stokes did not indicate when and where either or both Ron and Marilyn were told about Stokes's desire to rent to a commercial retailer, or who told either of them this. Moving Memo, p. 13.

<u>Only when confronted with the deficiencies of his initial story, does Stokes change his story: Stokes is now the victim of the Luskers' repeated misrepresentations, not of the Luskers' failure to "advise" him.</u> To support his changed story, Stokes interjects a portion of an application into the case. As was true of the fraud and conspiracy allegations of his complaint, in his affirmation, Stokes does not specify what Ron said or what Marilyn said, or what role each of them played in the mythical conspiracy to have Stokes unconditionally approved, but merely lumps Ron, Marilyn, MSA, and potentially Malley together.

Stokes conclusorily claimed in his complaint that MSA knew he could not afford the Unit without being able to lease the entire Unit to a commercial retailer, but did not link Ron and/or Marilyn to this information; Stokes still has not linked Ron and/or Marilyn to this information, and Stokes continues to disregard his unconditional written representation of his ability to afford the Unit. See, KA, Ex. 2, ¶31, and Moving Memo, p. 7. Thus, Stokes has failed to state claims against Ron and Marilyn for fraud or fraudulent inducement with sufficient particularity under Rule 9(b), and the first and second causes of action must be dismissed as against them.

Further, to plead the existence of a civil conspiracy (which does not exist as a separate tort under New York law) Stokes has to allege "an underlying tort"; an agreement between two

9

or more parties; an overt act in furtherance of the agreement; the parties' intentional participation in furtherance of a plan or purpose; and resulting damages. Lipin v. Hunt, 538 F.Supp. 2d 590, 598-599 (S.D.N.Y. 2008). Thus, since Stokes has failed to sufficiently allege a fraud claim, either in his complaint or in his complaint combined with the SA, the conspiracy claim must fail.

In addition, Stokes still fails to explain in his affirmation why MSA would participate in a plan for the Luskers to wrongfully take Stokes's initial deposit. On the other hand, it appears Stokes's counsel engages in the scurrilous conjecture that "defendant Lusker offer[ed] improper renumeration to those responsible for said approval or other improper consideration." Late Adden., p. 3. Certainly, baseless supposition in a brief filed in violation of this Court's order does not meet Rule 9's particularity requirements. Therefore, Stokes has failed to state a claim for fraudulent conspiracy and the claims against the Luskers in Stokes's lawsuit must be dismissed.

## CONCLUSION

For all of the foregoing reasons, we respectfully request that the Court dismiss this action with prejudice as against the Luskers.

Dated:  New York, New York
        July 31, 2008

                                          Respectfully submitted,

                                          KARSON & LONG, LLP

                                          By: /s/ Barry M. Karson
                                               Barry M. Karson (BK-0177)
                                          Attorneys for Defendants
                                          Ronald Lusker and Marilyn Kocher Lusker
                                          600 Third Avenue, 15th Floor
                                          New York, New York 10017
                                          (212) 490-8413

Of Counsel:

David G. Tobias, Esq.