UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------ X
CHRISTIAN STOKES,

                                 Plaintiff,                    08 Civ. 3667 (CM) (DFE)

        - against -

RONALD LUSKER, MARILYN KOCHER LUSKER,
EBERT & ASSOCIATES, STEVEN EBERT, ESQ.,
ANDREWS BUILDING CORP., MALLEY GROUP,
ERIC MALLEY, 85-87 MERCER STREET
ASSOCIATES, INC.

                                Defendants.
------------------------------------------------ X


## DEFENDANTS' EBERT & ASSOCIATES and STEVEN EBERT, ESQ.'S, REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT


                                                         WILSON, ELSER, MOSKOWITZ,
                                                         EDELMAN & DICKER LLP
                                                         *Attorneys for Defendants*
                                                         Ebert & Associates and Steven Ebert, Esq.
                                                          150 East 42nd Street
                                                          New York, New York 10017-5639
                                                          (212) 490-3000
                                                          File No. 07765.00101

Of Counsel:
   *Thomas W. Hyland*
   *Lauren J. Rocklin*

3302692.1

TABLE OF CONTENTS

Page

Table of Authorities ................................................................................................................. ii

Preliminary Statement ............................................................................................................... 2

Argument .................................................................................................................................... 2

    I. Plaintiff's Cause of Action Against Ebert Fails To State A Claim ............................... 2

        A.    Plaintiff's Admissions Are Fatal To Any Claim for Legal Malpractice And Therefore Dismissal of the Complaint Against Ebert is Warranted ........................................................................... 3

            i.    The Contract Bars Plaintiff's Claims Because He Assumed The Risk of Not Having Adequately Read the Documents .......... 3

            ii.   As A Matter of Law, Plaintiff's Recklessness Cannot Be Imported To Ebert In The Form Of A Malpractice Claim ............ 5

        B.    The Doctrine Of Caveat Emptor And A Buyer's Duty To Be Prudent Dictates Dismissal of Plaintiff's Claim For Legal Malpractice Against Ebert .......................................................................................................... 9

Conclusion ................................................................................................................................ 10

# TABLE OF AUTHORITIES

**STATUTES**

28 U.S.C. § 1746 .................................................................................................................2

Fed. R. Civ. P. 12(b)(6).. ................................................................................................2, 10

Fed. R. Civ. P. 56.................................................................................................................10

**CASES**

Beattie v. Brown & Wood, 243 AD2d 395 (1st Dept. 1997). ........................................6, 8, 9

Caiati v. Kimel Funding Corp., 154 A.D.2d 639; 546 N.Y.S.2d 877
    (2d Dept. 1989).............................................................................................................5, 6, 8

Design Strategy Corp. v. Nghiem, 14 F. Supp.2d 298; 1998 U.S. Dist. LEXIS 1723
    (S.D.N.Y. 1998).......................................................................................................................4

Greenfield v. Shapiro, et. al., 106 F. Supp.2d 535; 2000 U.S. Dist. LEXIS 10539
    (S.D.N.Y. 2000) ................................................................................................................9, 10

Gillman v. Chase Manhattan Bank, 73 N.Y.2d 1, 11; 537 N.Y.S.2d 787 (1998)..............7

Kirk v. Heppt, 532 F. Supp.2d 586, (S.D.N.Y. 2008) ..........................................................3

London v. Courduff, 141 A.D.2d 803; 529 N.Y.S.2d 874 (2d Dep't 1988) .......................9

Lunney & Crocco v. Wolfe, 243 A.D.2d 348, 663 N.Y.S.2d 164 (1st Dept. 1995) .......8, 9

Maines Paper & Food Serv. V. Adel, 256 A.D.2d 760, 761-62, 681 N.Y.S.2d 390, 391
    (3d Dept. 1998)..........................................................................................................................4

Mancuso v. Rubin, 2008 NY Slip Op 5488; 2008 N.Y. App. Div. LEXIS 5444 (2d Dept.
    2008)........................................................................................................................................9

Metzger v. Aetna Ins. Co., 227 N.Y. 411 (1920) ..................................................................6

Phillips v. Better Homes Depot, Inc., 2003 U.S. Dist. LEXIS 27299
    (E.D.N.Y. 2003) ................................................................................................................9, 10

Pimpinello v. Swift & Co., 253 N.Y. 159, 170 N.E. 530 (1930) .........................................6

Rosner v. Paley, 65 N.Y.2d 736, 738 (1985).........................................................................3

Simms v. Biondo, 816 F. Supp. 814, 820; 1993 U.S. Dist. LEXIS 4068
(E.D.N.Y. 1993) .................................................................................................... 9

Schneider v. Revici, 817 F.2d 987; 1987 U.S. App. LEXIS 5725 (1987)...................... 6

Sofio v. Hughes, 162 A.D.2d 518, 519; 556 N.Y.S.2d 717 (2d Dept. 1990) ................. 7

Stambrovsky v. Ackley, 169 A.D.2d 254, 572 N.Y.S.2d 672 (1st Dept. 1991) ........... 9, 10

Tatar and Oneal v. Gold Inc., et. al., 2002 U.S.Dist. LEXIS 16588
(S.D.N.Y. 2002) ..................................................................................................... 6

Tortura v. Sullivan Papain Block McGrath & Cannavo, P.C., 21 A.D.3d 1082, 1083, 803
N.Y.S.2d 571 (2d Dep't 2005) .............................................................................. 3

Worcester Ins. Co. v. Hempstead Farms Fruit Corp. 220 A.D.2d 659; 633 N.Y.S.2d 66
(2d Dept.1995)........................................................................................................ 7

**OTHER**

Williston on Contracts (4th ed.) § 70:113 .......................................................................... 4

## PRELIMINARY STATEMENT

Defendants Ebert & Associates and Steven Ebert, Esq. (collectively referred to as "Ebert"), respectfully submit this Reply Memorandum of Law in response to Plaintiff's Affirmation, Memorandum of Law, and Addendum Memorandum of Law in Opposition to Ebert's Motion to Dismiss, dated July 10, 2008,[1,2] and in further support of Ebert's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Complaint (the "complaint" or "compl.") for failure to state claims upon which relief can be granted. Plaintiff's claims against Ebert, sounding in legal malpractice, represent nothing more than a misguided and unsupported attempt to transform plaintiff's dissatisfaction with a real estate transaction gone sour into an action against everyone involved in the purchase, including his broker, the sellers, the co-op corporation and his attorney, Ebert. Stokes attempted to purchase a $14 million cooperative apartment unit in the Soho neighborhood of Manhattan with only a $250,000 deposit. As set forth within and in Ebert's original moving papers, plaintiff's claims fail as a matter of law.

## ARGUMENT

### PLAINTIFF'S CAUSE OF ACTION AGAINST EBERT FAILS TO STATE A CLAIM

Whereas paragraph 1 of the complaint refers to "malpractice," the sole cause of action against Ebert, the fifth cause of action (Compl. ¶¶31-34) fails to articulate any discernable cause

---

[1] All references to Plaintiff's Affirmation in Opposition, dated July 21, 2008, will hereinafter be cited as "Pl. Aff. at ___." All references to Plaintiff's Memorandum of Law in Opposition, dated July 21, 2008, will hereinafter be cited as "Pl. MOL at ___."

[2] Stokes's affirmation fails to comply with 28 U.S.C. § 1746 requiring he declare the information "true and correct" and does not reflect where the document was executed. In addition, his affirmation is in direct violation of this Honorable Court's July 17, 2008 order which mandated he submit an "affidavit explaining who he is, e.g., country of citizenship, domicile, etc." (emphasis added). Finally, plaintiff's addendum memorandum of law is late, as all of plaintiff's answering papers on the motion were to be filed on or before July 21, 2008. For these reasons, plaintiff's affirmation and addendum memorandum of law should be disregarded by the Court.

of action or allege specific factual allegations from which one could be inferred.[3] Assuming the fifth cause of action attempts to allege legal malpractice, it is ripe for dismissal. Rosner v. Paley, 65 N.Y.2d 736, 738 (1985), Kirk v. Heppt, 532 F. Supp. 2d 586 (S.D.N.Y. 2008) (the sufficiency of legal malpractice complaint presents a question of law and may be determined by a trial court on a motion to dismiss). Neither plaintiff's complaint nor his opposition papers assert any act, error or omission by Ebert that could have caused the plaintiff's alleged damages. Instead, both the complaint and plaintiff's opposition papers contain conclusory, contradictory, and self-serving allegations, regarding his knowledge and involvement in the purchase of 85-87 Mercer Street, New York, New York (the "Premises") in an effort to fabricate a claim against Ebert.

A. **Plaintiff's Admissions Are Fatal To Any Claim for Legal Malpractice And Therefore Dismissal Of The Complaint Against Ebert Is Warranted**

    i. **The Contract Bars Plaintiff's Claims Because He Assumed The Risk of Not Having Adequately Read the Documents**

In an attempt to bolster his argument against dismissal, plaintiff makes the following admissions: in his affirmation, plaintiff claims he never received the "proprietary lease or any such documents," (Pl. Aff. ¶ 9, 11) and that that Ebert was the only one that had such documents (Pl. Aff. ¶12); yet in his memorandum of law, plaintiff states: he "readily admits signing the agreement and that he *failed to adequately* review both the propriety Lease and the Co-operative Offering Plan." (Pl. MOL p.2) (emphasis added). He further states "it is alleged that plaintiff *did not understand the terms of the contract* and defendant failed to explain such terms." (Pl. MOL p.9) (emphasis added).

It is respectfully submitted that plaintiff's attempt to use his affirmation in opposition to

---

[3] Plaintiff's pleading deficiencies warrant dismissal (see Tortura v. Sullivan Papain Block McGrath & Cannavo, P.C., 21 A.D.3d 1082, 1083, 803 N.Y.S.2d 571 (2d Dep't 2005)).

3

3302692.1

Ebert's motion to dismiss and to buttress the complaint actually bolsters the arguments in support of dismissal. Plaintiff's admission that he failed to adequately review these documents, a statement which plaintiff cannot retract now, is fatal to his legal malpractice claim. The Contract, which plaintiff admittedly signed, unequivocally states:

> [Plaintiff] has examined and is satisfied with, or (except as to any matter represented in this Contract by Seller) accepts and assumes the risks of not having examined, the Lease, the Corporation's Certificate of Incorporation, By-laws House Rules, minutes of the shareholder's and director's meetings, most recent audited financial statement and most recent statement of tax deductions available to the Corporations shareholders. (Contract ¶5).

Thus, plaintiff's assumption of the risks associated with failing to read the Lease and Co-operative Offering Plan, as reinforced by the admissions in his Affirmation and Memorandum of Law in Opposition, establishes that plaintiff's claim for legal malpractice fails under the plain terms of the Contract. Maines Paper & Food Serv. v. Adel, 256 A.D.2d 760, 761-62, 681 N.Y.S.2d 390, 391 (3d Dep't 1998) (defendant was bound by personal guarantee clause in contract despite his failure to read or understand the contract or its terms); see generally, Design Strategy Corp. v. Nghiem, 14 F. Supp. 2d 298; 1998 U.S. Dist. LEXIS 1723 (S.D.N.Y. 1998); Williston on Contracts (4th ed.) §70:113.

Plaintiff's other claim -- that his failure to timely receive the Purchase Agreement ("Agreement"), and his refusal to sign it, demonstrates his lack of knowledge regarding the use limitations on the Premises -- is equally belied by the plain terms of the Contract. The Agreement, annexed to Plaintiff's Affirmation as Exhibit B, sets forth certain obligations agreed to by the Plaintiff in connection with his purchase of the Premises. (Pl. Aff. Exhibit B). In his Affirmation, plaintiff states that upon his review of the Agreement, which was not provided to him until after he signed the Contract, he learned that the Premises could not be rented to commercial tenants. (Pl. Aff. ¶¶ 7). Plaintiff's argument is inconsequential. First, the Agreement

4

clearly states "Christian Stokes ("Purchaser"), has *entered* into a contract of sale…" (Pl. Aff. Exhibit B) (emphasis added). Clearly, the Agreement was meant to be signed *after* the Contract was entered into. Further, a complete reading of the Agreement demonstrates that its covenants, especially the provision regarding the limitations on the use of the property as defined by the provisions of the New York City Zoning Resolution ("Resolution"), are completely redundant of the Contract which more than adequately alerted plaintiff to the restrictions on the use of the Premises even prior to his signing of any documents relative to the purchase. For example, the same information found in paragraphs 3 and 4 of the Agreement, discussing the provisions of the Resolution, mirror provision 14(c) of the Lease, included by reference in the Contract. (See Pl. Aff. Exhibit B; and Ebert's Original Motion to Dismiss, Exhibit B). Likewise, the exoneration clause in paragraph 1 of the Agreement, which states that plaintiff has read and is familiar with the terms of the [Premises] by laws, proprietary lease, house rules and regulations and all restrictions and limitations contained therein (Pl. Aff. Exhibit B ¶1), is redundant of paragraph 5 of the Contract which, as set forth above, states that plaintiff examined these documents and assumed the risk of not reviewing them. Plaintiff's admission therefore, that he never received the proprietary lease or any such co-op documents (Pl. Aff. ¶¶ 9, 11, 12), contradicts the terms of the contract and support the case's readiness for dismissal.

   ii. **As A Matter of Law, Plaintiff's Recklessness Cannot Be Imported To Ebert In The Form Of A Malpractice Claim**

It is well established that a lawyer is not responsible for the reckless behavior of their clients. <u>Caiati v. Kimel Funding Corp.</u>, 154 A.D.2d 639; 546 N.Y.S.2d 877 (2d Dept. 1989) (holding that culpable conduct of the plaintiff client in a legal malpractice action, "including contributory negligence or assumption of risk," may be pleaded by the defendant attorney).

3302692.1

Express assumption of risk provides a complete defense to negligence. See Schneider v. Revici, 817 F.2d 987; 1987 U.S. App. LEXIS 5725 (1987).

It is respectfully submitted that plaintiff's admitted failure to adequately read the purchase documents and his express assumption of the risks associated with that failure, cannot now be imputed to a viable claim for malpractice as against Ebert. There are no allegations set forth in the complaint, or in his opposition, that plaintiff told Ebert he did not understand the terms of the Contract, that he asked Ebert for clarification of the Contract provisions, or that he wished to have the Contract explained to him in further detail before proceeding to sign it. Plaintiff's blatant disregard for understanding the documents he signed is exactly the type of culpable conduct that precludes plaintiff from demonstrating the required proximate cause necessary to sustain a claim of malpractice as against Ebert. As such, plaintiff's complaint must be dismissed. Caiati, supra.

Perhaps more importantly, as set forth in Ebert's original moving papers, is the legal principle applied throughout the Courts of this state: to wit -- a party is "responsible for his signature and is bound to read and know what he signed, Tatar and Oneal v. Gold Inc., et. al., 2002 U.S.Dist. LEXIS 16588 (S.D.N.Y. 2002); Beattie v. Brown & Wood, 243 AD2d 395 (1st Dept. 1997). In the early seminal case of Pimpinello v. Swift & Co., 253 N.Y. 159 (1930), the New York Court of Appeals held "if the signer could read the instrument, not to have read it was gross negligence; if he could not read it, not to procure it to be read was equally negligent; in either case the writing binds him." Id. at 162.

Thereafter, in Metzger v. Aetna Ins. Co., 227 N.Y. 411 (1920), the Court stated:

> To hold that a contracting party, who, through no deceit or overbearing inducement of the other party, fails to read the contract, may establish and enforce the contract supposed by him, would introduce into the law a dangerous doctrine.... Ignorance through negligence or inexcusable

trustfulness will not relieve a party from his contract obligations. He who signs or accepts a written contract, in the absence of fraud or other wrongful act on the part of another contracting party, is conclusively presumed to know its contents and to assent to them and there can be no evidence for the jury as to his understanding of its terms. Id. at 415-416.

The law in New York could not be clearer: a party is bound by the contracts he/she signs, **_even if he or she later claims to have misunderstood it._** See Worcester Ins. Co. v. Hempstead Farms Fruit Corp., 220 A.D.2d 659; 633 N.Y.S.2d 66 (2d Dept.1995); Sofio v. Hughes, 162 A.D.2d 518, 519; 556 N.Y.S.2d 717 (2d Dept. 1990). Specifically, "a party who signs a document without any valid excuse for having failed to read it is 'conclusively bound' by its terms." Sofio, supra; (citing Gillman v. Chase Manhattan Bank, 73 N.Y.2d 1, 11; 537 N.Y.S.2d 787 (1998)).

Plaintiff has offered no case law (or any other legal treatise, practice commentary or law review article, for that matter) to refute this long-standing principle, to explain why he failed to "adequately review" the documents. Nor does plaintiff provide authority to support his argument that execution of the Contract's exculpatory clause (Contract ¶ 5) -- whereby plaintiff, as purchaser, acknowledged review of the Lease (among other things), and assumed the risk of not having examined the Lease -- also means that Ebert assumed the risk. First, the Contract is in plain English and states "buyer." It does not state buyer and/or buyer's representatives or buyer and his attorney. Moreover, the Contract defines "Purchaser," as used in Paragraph 5 of the Contract, as "CHRISTIAN STOKES..." It does not say "Christian Stokes and his representatives." (Ebert's Original Motion to Dismiss, Contract ¶ 5).

Moreover, plaintiff makes the conclusory statement that it is "hornbook law" that a "buyer" who signs such an agreement or contract also means the "buyer's representative, meaning defendant Ebert himself." What Hornbook? Where is the authority to support such an

7

3302692.1

argument that would inevitably hold any fiduciary of a sophisticated business person, engaged in the purchase of a $14 million property, liable for that real estate investor's recklessness?

Plaintiff's admitted recklessness in signing the Contract without adequately reviewing both the Proprietary Lease and the Co-operative Offering Plan cannot now be shifted to Ebert, simply because plaintiff is dissatisfied with the outcome of the transaction which he voluntarily and without coercion assented to. Simply put, as a matter of law Ebert cannot be held liable for plaintiff's contributory negligence. Caiati, supra.

Plaintiff attempts to distinguish the cases cited in Ebert's Memorandum of Law, by claiming the facts of those cases do not mirror identically those in the case at bar. What plaintiff fails to understand and/or acknowledge is that the principle of law, applicable herein, is the same: a party who signs a document without any valid excuse for having failed to read it is 'conclusively bound' by its terms and is precluded from asserting a cause of action alleging malpractice with respect to the execution of said document. Beattie v. Brown & Wood, 243 A.D.2d 395; 663 N.Y.S.2d 199; 1997 N.Y. App. Div. LEXIS 10779 (1st Dept. 1997); Lunney & Crocco v. Wolfe, 243 A.D.2d 348, 663 N.Y.S.2d 164 (1st Dept. 1997).

To the extent plaintiff seeks to distinguish Beattie, a complete reading of that case shows that the First Department stated: "Since plaintiff was competent to execute the settlement agreement, and no fraud is alleged, he is responsible for his signature and is bound to read and know what he signed" Id. at 395. This conclusion and legal principle is completely applicable here. Plaintiff does not allege that Ebert engaged in any nefarious or fraudulent behavior. As such, plaintiff's attempt to distinguish this case and the proposition for which it stands, fails.

Similarly, in Lunney, the First Department held that the claim for legal malpractice was foreclosed by the agreement's exculpatory clause. Id. Interestingly, and despite plaintiff's claim

8

3302692.1

to the contrary, nowhere in either of these cases is there a discussion on the public policy regarding the enforcement of settlements (Pl. MOL, p. 9; Beatie, supra; Lunney, supra). Thus, the cases cited by Ebert support the argument that plaintiff is bound by the agreement that he signed.

**B.  The Doctrine Of Caveat Emptor And A Buyer's Duty To Be Prudent Dictates Dismissal of Plaintiff's Claim For Legal Malpractice Against Ebert**

The doctrine of *caveat emptor*, independent of the contractual provisions found in the case at bar, also precludes the plaintiff's claim against Ebert. With respect to real estate transactions, real property is purchased with the doctrine of *caveat emptor* in mind, "let the buyer beware," which remains the rule of law in New York. Mancuso v. Rubin, 2008 NY Slip Op 5488; 2008 N.Y. App. Div. LEXIS 5444 (2d Dept. 2008). Under this doctrine, the "buyer has the duty to satisfy himself as to the quality of his bargain." Phillips v. Better Homes Depot, Inc., 2003 U.S. Dist. LEXIS 27299 (E.D.N.Y. 2003) (citing Simms v. Biondo, 816 F. Supp. 814, 820; 1993 U.S. Dist. LEXIS 4068 (E.D.N.Y. 1993); Greenfield v. Shapiro, et. al., 106 F. Supp.2d 535; 2000 U.S. Dist. LEXIS 10539 (S.D.N.Y. 2000); See generally, Stambrovsky v. Ackley, 169 A.D.2d 254, 572 N.Y.S.2d 672 (1st Dept. 1991). (holding the doctrine of caveat emptor requires a buyer act prudently to assess the fitness and value of his purchase and operates to bar the purchaser who fails to exercise due care from seeking the equitable remedy of rescission). Thus, New York still adheres to the doctrine of caveat emptor in real estate transactions, and requires a buyer to act prudently to assess the fitness and value of his purchase. Id.

Beyond the fact that plaintiff is a sophisticated real estate investor with properties in the United States, specifically within New York, and other countries, (Pl. Aff. ¶¶ 2-3), he is still held to knowledge of the old and time tested maxim "let the buyer beware." He has a duty to prudently assess the condition, suitability and appropriateness of his purchase. Phillips, supra; Greenfield, supra; See also, London v. Courduff, 141 A.D.2d 803, 529 N.Y.S.2d 874 (2d Dep't 1988)

(holding the buyer has the duty to satisfy himself as to the quality of his bargain pursuant to the doctrine of *caveat emptor*, which still applies to real estate transactions).

Here, plaintiff, an admittedly sophisticated real estate investor (Pl. Aff. ¶¶ 2-3) had information regarding use limitations on the Premise readily ascertainable from other sources. With matters of public record, which are readily available to all parties, the doctrine of caveat emptor will apply in New York courts. Specifically, where the condition concerns a zoning ordinance or environmental condition, or any other matter ordinarily governed by a regulatory agency that maintains public records, the purchaser will be bound by the doctrine of caveat emptor and no action for rescission will arise by virtue of the seller's non-disclosure. Phillips, supra; Greenfield supra; Stambrovsky, supra.

Here, there was nothing stopping plaintiff, a sophisticated real estate person, from contacting the New York City Zoning Board and/or the New York City Department of Buildings to ascertain the limitations established under the Resolution and applicable to the Premises. Plaintiff had the means and opportunity to discern the truth about any representations made to him, by any of the parties involved, with regard to the limitations, if any, on the Premises and failed to make use them. Plaintiff's failure to do so, cannot translate into malpractice by Ebert.

## CONCLUSION

For all the foregoing reasons it is respectfully requested that this Court issue an Order dismissing this action against Ebert pursuant to F.R.C.P 12(b)(6) or, alternatively, Rule 56.

Dated:   New York, New York
         August 1, 2008

                              Respectfully submitted,
                    WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
                    By: *Lauren J. Rocklin*
                        Thomas W. Hyland (TH-3559)
                        Lauren J. Rocklin (LR 7370)